In re WESTERN FARMERS ASSOCIA-
TION, a Washington Agricultural
Cooperative et al., Debtor.

**Bankruptcy No. 79–02143.**

United States Bankruptcy Court,
W. D. Washington.

Jan. 26, 1981.

Charles R. Ekberg and Thomas S. Zilly of Lane, Powell, Moss & Miller, Seattle, Wash., for debtor, Western Farmers Ass'n.

George Frasier of Riddell, Williams, Ivie, Bullitt & Walkinshaw, N. Michael Hansen, U. S. Securities & Exchange Commission, Seattle, Wash., Marianne McGettigan, Asst. Atty. Gen., State of Wash., Dept. of Agriculture, Olympia, Wash., Patrick Murphy of Murphy, Weir & Butler, San Francisco, Cal., for Spokane Bank for Cooperatives.

William N. Appeal of Roberts, Shefelman, Lawrence, Gay & Moch, Seattle, Wash., for Finance Fund Certificate Holders Creditors Committee.

Willard Hatch of Quigley, Hatch, Loveridge & Leslie, Seattle, Wash., for Official Creditors Committee.

## REVISED OPINION ON OBJECTION TO APPLICATIONS FOR INTERIM ALLOWANCES

SAMUEL J. STEINER, Bankruptcy Judge.

Lane, Powell, Moss & Miller, attorneys for the debtor, have filed an application for an interim allowance of attorney fees of $64,227.50. Roberts, Shefelman, Lawrence, Gay & Moch, counsel for the Committee of Finance Fund Certificate Holders, have filed a similar application for the sum of $15,875.

It is conceded that the legal services were necessary, that they were competently and properly performed, that the amounts applied for are reasonable, and that the debtor has the funds on hand to pay any awards that are now made. However, the SEC has objected to the allowance of the full amounts sought, contending it is the law in bankruptcy cases that interim fees should be well below any final allowance. In support of its position, the SEC has cited a number of cases decided under the Bankruptcy Act holding that a full interim fee allowance leads to procrastination. See *In re Imperial '400' National, Inc.*, 3rd Cir., 432 F.2d 232 (1970); *In re McGann Mfg. Co.*,

3rd Cir., 188 F.2d 110 (1951); *In re Keystone Realty Holding Co.*, 3rd Cir., 117 F.2d 1003 (1941); *In re Interstate Stores, Inc.*, S.D.N.Y., 437 F.Supp. 14 (1977); *In re Investors Funding Corp. of New York*, S.D. N.Y., 422 F.Supp. 461 (1976).

Under the Act, there was a question as to whether interim allowances were proper in any case. Some courts permitted such payments to alleviate hardship on the part of counsel faced with the dismal prospect of working on a difficult case for years without any hope of compensation until the matter was concluded. This issue has been laid to rest by Section 331 of the Code which specifically authorizes interim compensation.

Section 330 of the Code provides:

"(a) After notice to any parties in interest and to the United States trustee and a hearing, . . ., the court may award to . . . a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such . . . professional person, or attorney, as the case may be, . . . based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title; . . ."

In Vol. 2 of *Collier on Bankruptcy*, 15th Ed., Section 331.03, page 331–6, the authors state:

"The amount of interim compensation which may be allowed is to be reasonable, for actual, necessary services rendered, and based on the time, the nature, the extent and the value of the services rendered, and on the cost of comparable services other than in a case under the Code. . . . Thus, a court may allow interim compensation under section 331 in an amount equal to the actual services rendered by the applicant prior to the date of the fee request, *i. e.*, full compensation. This would include compensating attorneys and other professional persons at the full value of the professional services rendered so long as the interim compensation

allowed otherwise comports with the requirements of section 330." [citations omitted]

In considering Sections 330 and 331 together with their legislative history, I conclude that in making interim allowances under the Code, Bankruptcy Courts are no longer restricted by a doctrine of partial payment. The Code has eliminated the Act's concept of economy of administration and has made fees in bankruptcy matters comparable to those paid in other areas of legal practice.

Counsel for the SEC contends that the Ninth Circuit case of *Lutheran Hospitals and Home Society of America v. Duecy*, 9th Cir., 422 F.2d 200 (1970) is controlling. The opinion involved an application for a final allowance by an attorney for the trustee in a successful Chapter X. The facts indicated that the attorney had padded his final billing and had induced an innocent third party to invest substantial funds in the debtor relying in part on the attorney's estimate of his final fee, which proved to be one-fifteenth of the amount he actually requested. The attorney argued, and the Court acknowledged, that interim fees should generally be below the final award. However, this brief reference to the point at issue here can only be considered dicta. Neither the facts nor the law involved in *Lutheran Hospitals* are controlling.

*Vertex Systems, Inc.*, Bk.Ct.N.D.Ga., 5 BCD 204 (1979), a case decided under the Bankruptcy Act, dealt with this issue. The Court held that where procrastination is not involved, where it is unknown if the debtor will be able to confirm a plan, where making full payment contingent upon a successful reorganization might result in full compensation never being paid, and where full payment will reasonably assist in rehabilitation, the full interim allowance should be made. I conclude that the ruling of *Vertex Systems*, is a reasonable and practical approach to the problem of interim allowances and should be followed.

The case of *In re Quick Release, Inc.*, 6 B.R. 713, Bk.Ct.S.D., 6 BCD 1228 (1980), is a Code case containing similar reasoning.

This case involves over one hundred thousand creditors. The schedules reflect debts of almost $96,000,000 and assets of approximately $88,500,000. This reorganization is the largest that has been filed in this District, and it may be the largest now pending nationally. The case has presented a myriad of complex legal problems and at least two major lawsuits, one of which involves over seventy parties. The problems are ongoing. There is still doubt as to whether a plan can be confirmed. Nevertheless, the legal services rendered to date by the two applicants have been of the highest quality and in the finest traditions of the legal profession. At no time has there been the slightest hint of procrastination; nor do the amounts applied for fall within the category of being "overly generous". Full payment now will assist rather than impede the reorganization.

In addition, I feel that the long range result of adopting the SEC's position would be to drive qualified counsel away from this Court and out of the bankruptcy practice. Why would any competent firm with any sort of an established clientele spend its time working on a lengthy bankruptcy case, knowing that it might not receive full payment for its services until some indefinite time in the future, if ever? The best interests of such a firm would dictate that it spend its time and energy on behalf of non-bankruptcy clients whom it could bill and expect full payment from in the ordinary course of its practice.

Accordingly, I have concluded that the applications for interim allowances of Lane, Powell, Moss & Miller and of Roberts, Shefelman, Lawrence, Gay & Moch will be allowed in the full amounts prayed for.

Counsel for the debtor will prepare and present an appropriate order.