**In re WILSON FOODS CORPORATION, Williams Meat Co., Inc., Fischer Packing Company, Wilson Certified Express, Inc., Debtors.**

Bankruptcy Nos. 83–01034–A, 83–01038–A to 83–01040–A.

United States Bankruptcy Court, W.D. Oklahoma.

Jan. 10, 1984.

G. Blaine Schwabe III, of Mock, Schwabe, Waldo, Elder, Reeves & Bryant and Reef C. Ivey, II, Gen. Counsel, Oklahoma City, Okl., William J. Rogers of Pepper, Hamilton & Scheetz, Washington, D.C., and Roy H. Carlin of Reavis & McGrath, New York City, for debtors.

Gregory P. von Schaumburg, Chicago, Ill., for Securities and Exchange Com'n.

Stuart E. Hertzberg and I. William Cohen, of Hertzberg, Jacob & Weingarten, Detroit, Mich., and John W. Swinford, Jr., of Hastie & Kirschner, Oklahoma City, Okl., for Official Unsecured Creditors' Committee.

Peter D. Wolfson, of Booth, Lipton & Lipton, New York City, for Labor Creditors' Committee.

D. Kent Meyers, of Crowe & Dunlevy, Oklahoma City, Okl., and David S. Curry of Mayer, Brown & Platt, Chicago, Ill., for Continental Illinois Nat. Bank and Trust Co. of Chicago.

V. Burns Hargis, of Reynolds, Ridings & Hargis, Oklahoma City, Okl., for Manufacturers Hanover Trust Co. as Indenture Trustee.

Edwin A. McCabe and Stephen F. Gordon, of McCabe/Gordon, Boston, Mass., for Equity Security Holders' Committee.

RICHARD L. BOHANON, Bankruptcy Judge.

## MEMORANDUM DECISION AND ORDER

This matter involves applications for allowance of interim fees and expenses for attorneys and professional persons em-

ployed pursuant to 11 U.S.C. § 327. The same standards are applicable to the debtor-in-possession by 11 U.S.C. § 1107. Our discussion proceeds in light of the recent decision of the Court of Appeals for the Tenth Circuit, *Ramos v. Lamm*, 713 F.2d 546 (10th Cir.1983),[1] which deals with related issues, and how the *Ramos* factors interact in a bankruptcy case with the statutory provisions of the Bankruptcy Code regarding fees and expenses.

The Securities and Exchange Commission has interposed an objection to several applications for reasons more fully set forth below, and has made a request for a continuing objection for future interim applications in this case. The Commission derives its authority to be heard and raise issues in this case pursuant to 11 U.S.C. § 1109(a) and the Court is appreciative of the points raised during oral arguments and on briefs in this matter. The debtor has also objected to certain applications.

These proceedings have been consolidated for procedural purposes and the entities will be collectively referred to as the "debtor" and the term "applicants" will refer to all pending applications unless otherwise specified. The debtor is a public company engaged in the business of meat processing and packing and the sale of meat products. Wilson's sales amounted to $2.2 billion in fiscal year 1982, and its financial statements indicate assets of some $285 million and liabilities of approximately $210 million. As of July, 1982 its stockholders' equity was about $83 million. The debtor is the largest processor of pork in the U.S., presently accounting for about 12.5% of federally inspected slaughter of hogs, and ranks fifth in size among processors of meat. It has several thousand employees and a sophisticated and extensive executive staff operations division. In short, the debtor is a major public corporate entity with complex financial operations and sales involving millions of dollars.

The aggregate amount of interim allowances requested and considered for the first quarter period amount to approximately $1,276,000. Of this total request, expenses amount to about $125,000. In some cases the debtor had made retainer agreements for some professional persons and, prior to filing its bankruptcy petition, the debtor had engaged and received legal advice from some of the applicants.

Under the Bankruptcy Act of 1898 courts labored over the question of whether interim allowances were proper. A few courts permitted an interim payment to relieve the hardship of putting in long hours on a complex bankruptcy case where substantial time may elapse before final compensation could be considered. Other courts permitted no awards of compensation until the case was concluded. However, the question was resolved by the Bankruptcy Reform Act of 1978. Section 331 of the Code specifically authorizes the Court to allow interim compensation.

Section 330 provides in pertinent part:
(a) After notice to any parties in interest ... and a hearing ... the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—
(1) reasonable compensation for actual, necessary services rendered ... based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title; and
(2) reimbursement for actual, necessary expenses.

Fed.R.Bankr.P. 2016 provides that a person seeking interim compensation must file with the court an application setting forth a detailed statement of services and amounts requested from the estate. Finally, section 328 authorizes the Court to oversee compensation of professional persons and directs that it may allow compensation under

1. *Ramos* was a civil rights class action suit initiated in the district court of Colorado. It involved conditions in the maximum security unit of the Colorado State Penitentiary. The action was filed *pro se,* however several counsel for indigent rights organizations entered an appearance on behalf of the plaintiff.

terms and conditions it determines appropriate in light of developments in the case.

■ From the outset we note that the matter of considering attorney fees and compensation for professional persons requires notice and a hearing by the Court. *See Brown v. Gerdes,* 321 U.S. 178, 64 S.Ct. 487, 88 L.Ed. 659 (1944). The clear rationale for the hearing is to ensure the bankruptcy estate is administered as efficiently and economically as possible. A hearing is necessary in order for the Court to make the independent requisite determination of reasonableness and affords the applicant an opportunity to meet its minimum burden of explaining how the fee request was determined. 11 U.S.C. § 330(a); *see also In re Hamilton Hardware Co. Inc.,* 11 B.R. 326 (Bkrtcy.E.D.Mich.1981); *In re Foster Iron Works,* 3 B.R. 715 (D.S.D.Tex.1980). Consequently, we hold that notice and a hearing are required for those who seek compensation from the estate, even as to those applications where no objection has been filed. *See e.g. In re Crutcher Transfer Line, Inc.,* 20 B.R. 705 (Bkrtcy.W.D.Ky.1982).

In reviewing applications for compensation from the estate, the Court is guided by the considerations set forth *Ramos v. Lamm, supra,* and the decisions incorporated therein. However, we do not read the *Ramos* opinion in such a fashion so as to foreclose matters of particular circumstances in a bankruptcy proceeding. Indeed, *Ramos* infers and clearly acknowledges that "unusual circumstances" may exist in other cases which may warrant a modified application of its factors. In addition, matters which may be relevant in a civil rights case such as *Ramos* may be inappropriate in a bankruptcy reorganization case, especially one on the scale of the instant proceeding. For these reasons, among others, we proceed to address the various objections and concerns in view of *Ramos* and related decisions.

■ There is no serious debate that the Court has an independent duty to determine that requests for compensation are reasonable, necessary and comply with provisions of the Bankruptcy Code. 11 U.S.C. § 330; *see also, Matter of Liberal Market, Inc.,* 24 B.R. 653 (Bkrtcy.S.D.Ohio 1982); *In re Garland Corporation,* 8 B.R. 826 (Bkrtcy. D.Mass.1981). The major factors in making this determination and assessing awards have been cogently set out in *Ramos* and we find no advantage in enumerating them here. However, two points of particular importance should be emphasized as being wholly applicable to bankruptcy proceedings. First, any professional person who intends to seek compensation must keep meticulous, contemporaneous time records and such records must reveal sufficient data which allow the Court to make an informed judgment regarding the specific task and hours allotted.[2] Secondly, the Court is watchful for hours expended which constitute a potential duplication of services and therefore an unnecessary burden to the estate.

As a related matter we take this opportunity to point out that circumstances may exist where the object of the Court's review of applications may be satisfied by other oversight mechanisms. For example, as in the instant case the debtor estate has an independent interest in objecting to unreasonable and unnecessary expenses or fees. The general counsel for the debtor, an experienced attorney familiar with fee matters, routinely reviews all fee applications. He takes the burden of visiting with each law firm to discuss the various charges and makes adjustments where necessary.

---

**2.** We are not unmindful, however, of at least one problem which may attend an application for interim compensation that seeks to provide the meticulous detail required by *Ramos.* This concern would be that of possible exposure of privileged information between the lawyer and client. *Ramos* did not contemplate this matter due to those fee applications being considered after the case had been adjudicated. In bankruptcy court, applications for interim compensation are somewhat different since they are considered prior to end of litigation and while there may be confidences and secrets which should not be violated. Should this situation arise it is suggested that the court consider such applications or portions thereof *in camera.*

Monthly reports for legal fees and monthly litigation reports are made for each law firm which seeks compensation. On several occasions certain requests for fees and expenses have been withdrawn upon objection by the general counsel. Under such circumstances the Court cannot find any reason for "back-scratching" as respects requests for allowance of compensation. Thus, where there are sufficient internal safeguards such as those here, the Court's review of applications need not be as detailed as it otherwise should be absent these internal controls by the debtor. We feel this point is further buttressed by the sheer weight of the Court's docket for fee applications in this district. In this regard any lessening of the Court's burden in reviewing these applications would be welcomed so long as sufficient safeguards exist which reasonably guarantee that the purpose of review has been fulfilled.

■ We next address the question regarding what constitutes reasonable hourly rates for attorney fees. Attorneys for the debtor as well as counsel for the various committees, creditors and other interest come from geographic areas outside Oklahoma City. The hourly rate for these counsel varies from a low for paralegal service of approximately $55 per hour to a high of $225 per hour for representation by partners in New York firms. The fees for other professionals do not vary greatly from the above hourly rates. In *Ramos* the Circuit Court noted "[a]bsent more unusual circumstances than we see in this case, the fee rates of the local area should be applied even when the lawyers seeking fees are from another area." at 555. It went on to note that in most metropolitan areas there are lawyers who possess sufficient skills to handle all but the most unusual cases. While this admonition is generally true for most bankruptcy matters, we think large and complex bankruptcy reorganization cases qualify under the "unusual circumstances" exception provided by the court.

This case is more representative of a "national case" not only in its size, but in its scope as well. Beside the data concerning this debtor already noted it should be added that litigation of this case has involved some of the major financial institutions in the country; the S.E.C.; the NLRB; and numerous large creditors. Prior to bankruptcy the debtor had employed outside counsel from other parts of the country who were familiar with its operations and legal affairs. Special counsel were required to deal with the potential legal ramifications of the debtor's filing and subsequent contested matters, both anticipated and those which were not. Also, the debtor has offices and subsidiary entities throughout the country and many of the law firms involved are national law firms with offices in several cities. Their clients are generally large corporations with technical legal problems which demand utmost legal experience and competence. Finally, the magnitude of the issues presented by various adversary proceedings have the potential of far reaching impact on bankruptcy, labor and commercial law. These questions are clearly national in scope and may require the skill of outside counsel working in conjunction with local counsel.

We also note the legislative history of section 330(a) where the Congress expressed the view that "the policy of this section is to compensate attorneys and other professionals serving in a case under title 11 at the same rate as the attorney or other professional would be compensated for performing comparable services other than in a case under title 11." 124 CONG.REC. 32,-394 (1978). It appears contrary to this legislative intent to deny bankruptcy lawyers from other regions the normal fees charged clients when their expertise is needed in a complex proceeding in this venue. The better view is that the matters surrounding this estate do indeed warrant special consideration and constitute more unusual and unique circumstances than those faced by the court in *Ramos*. Accordingly, we find that outside counsel may charge rates normally charged clients in their respective regional areas for counsel time expended in these proceedings.

The SEC has suggested that it is the better practice with regard to awarding payment for interim compensation that the Court, in all cases, allow compensation at less than the full amounts requested. Thus, it advocates the position that bankruptcy courts should properly "hold back" a certain percentage of requested compensation. This proposition is supported by several cases which have followed this practice. *See e.g. Matter of Georgia Steel, Inc.,* 19 B.R. 834 (Bkrtcy.M.D.Ga.1982); *Matter of Mansfield Tire and Rubber Company,* 19 B.R. 125 (Bkrtcy.N.D.Ohio 1981); *Matter of Pennsylvania Tire and Rubber Co. of Mississippi, Inc.,* 19 Bankr. 124 (Bkrtcy.N.D. Ohio 1980); *accord In re Coconut Grove Bayshore, Inc.,* 33 B.R. 194 (Bkrtcy.S.D.Fla. 1983). However, as the SEC acknowledges, the rule is not absolute. *Cf. In re Bobbie Brooks, Inc.,* No. B 82–0144 (Bankr.N.D. Ohio 1982); *In re Goldblatt Bros. Inc.,* No. 81 B 7075 (Bankr.N.D.Ill.1981); *In re Western Farmers,* 8 B.R. 539 (Bkrtcy.W.D.Wash. 1981).

There is no Bankruptcy Code authority nor legislative history which would mandate applying in every case the "hold back" principle. Indeed, as noted in the above cases, courts have previously allowed full compensation on an interim basis when circumstances warrant. Also, it is clear that when it enacted the new Code, Congress particularly sought to overrule decisions and cast aside the concept that bankruptcy courts were restricted to the view of "economy of administration" in fee matters. On this point Congress has stated *"Massachusetts Mutual Life Insurance Company v. Brock,* 405 F.2d 429, 432 (5th Cir.1968) is overruled. Notions of economy of the estate in fixing fees are outdated and have no place in bankruptcy code." 124 CONG. REC. 32,395 (1978). The statutory language of section 330 also states that professional persons may be compensated for "actual, necessary services rendered . . . based on the time, the nature, the extent, and the value of such services. . . ." This language as well as related statements in section 331 infer that full compensation may be awarded on an interim basis. The doctrine of partial payment may have its place in some cases, but analytical considerations should not be discarded in light of the Reform Act. We suggest the more logical approach would be to examine the facts and circumstances of each debtor-estate and make a determination of full or partial award accordingly. While certainly the Court is unable to foresee all the possible contingencies which may come to pass by the close of this case, such a predicament is not uncommon. We decline the clairvoyant role with respect to interim compensation suggested by the court in *In re Coconut Grove Bayshore, Inc., supra.*

In this case we fail to see a need for imposing partial payment of compensation by applying a hold back. The debtor both presently and at time of filing was a solvent company and by all indications its apparent chance of an effective reorganization is much greater than most. It is an on-going concern which has successfully settled major labor disputes which it says caused it to initially seek protection of the Court. We have previously noted the financial assets of the estate as being quite substantial and the court appointed examiner offers favorable projections for the debtor in the months ahead. This case is unlike those cited by the SEC. *In re Mansfield Tire & Rubber Co., supra* (the debtor was substantially in a posture of liquidation); *Matter of Georgia Steel, Inc., supra* (financial condition of the debtor was tenuous); *In re Penn-Dixie Industries, Inc.,* 18 B.R. 834 (Bkrtcy.S.D.N.Y.1982) (potential for survival was considered slim). Rather, the case appears at the opposite end of the financial spectrum and, therefore, commands different considerations. In cases where the rationale for imposing a hold back is absent the Court need not blindly follow this undefined practice. *Matter of Saxon Industries, Inc.,* 29 B.R. 319 (Bkrtcy. S.D.N.Y.1983). Moreover, interim fees are subject to review by a bankruptcy judge at any time during the proceeding and appropriate adjustments may then be made including return of part or all prior allowed compensation. *In Re Den-Col Cartage &*

*Distribution, Inc.,* 20 B.R. 645 (D.D.Col. 1982); *In re Futuronics Corp.,* 5 B.R. 489 (D.C.S.D.N.Y.1980). Accordingly, in addition to points previously cited, we see no danger in allowing full interim compensation when the Court may order recoupment of fees should this become necessary. Finally, although the Court is appreciative of concerns raised by the SEC, we are under no obligation to grant it any particular deference concerning compensation awards. *In re Pacific Homes,* 20 B.R. 729 (Bkrtcy.C. D.Cal.1982); *see also In re Westec Corporation,* 313 F.Supp. 1296 (D.S.D.Tex.1970); *In the Matter of Polycast Corporation,* 289 F.Supp. 712 (D.Conn.1968). For all the foregoing reasons we hold that in light of the circumstances of this estate it is proper to allow full interim compensation without regard to any hold back provision.

■ Our final consideration in this matter addresses the issues of whether applicants may be awarded compensation for time used to prepare fee applications and oral arguments supporting such applications in this Court; and under what circumstances, if any, counsel may be awarded enhanced fees or compensation. Both of these considerations were addressed in *Ramos* and we find no reason to distinguish the Circuit Court reasoning based on any unique factors for a bankruptcy proceeding.

The *Ramos* court along with the great weight of authority in other jurisdictions opposes any award for time spent in preparing fee applications and court time expended supporting such applications. *See e.g., Matter of Liberal Market, Inc., supra; In re Pacific Homes, supra.* Time spent preparing and computing time records and presenting the same before the Court is not properly a service rendered on behalf of the debtor-estate, but a necessary expense of doing business.[3] Accordingly, such fee requests are not allowable as compensation from the estate and shall be denied.

---

3. However, the Court envisions a possible exception to this general rule in circumstances where the debtor, either frivolously or without foundation, interposes objections to applica-

■ In a similar vein, this Court will closely scrutinize any application for compensation based upon any enhancement of normal fees. Only in cases of exceptional service do we feel enhancement awards are proper in bankruptcy proceedings. Such instances will be rare and the Court reserves for another time a determination as to when, and under what conditions enhancement would be justified. As for the applications now under consideration enhancement awards will be denied as premature.

We intimate no view at this time on other matters noted in *Ramos* which were not subject to objections raised by the parties in these proceedings and which might call for interpretation and application to proceedings in bankruptcy. However, we note that for the most part the concerns and views expressed in the *Ramos* civil rights opinion are equally applicable to this Court respecting awards for fees and expenses of professional persons.

Accordingly, the debtor is authorized to make awards to professional persons in a manner consistent with this decision and previous order of this Court.

tions for purposes of delay or animosity. Under such circumstances the applicant may justifiably seek compensation for in-court time defending his application.