**In re AMERICAN INTERNATIONAL AIRWAYS, INC. Jointly Administered with: American International Industries, Inc., A.C. Travel Service, Inc., American International Transport, Inc., Debtors.**

**Bankruptcy Nos. 84–02379K, 84–02411K, 84–03919K and 84–04050K.**

United States Bankruptcy Court, E.D. Pennsylvania.

March 18, 1985.

See also 44 BR 143.

Pace Reich, Philadelphia, Pa., for debtor.

James M. Peck, Marshall A. Fleisher, Philadelphia, Pa., for American Corp., et al.

Harry P. Begier, Jr., Philadelphia, Pa., Trustee.

Lawrence G. McMichael, Anne Marie P. Kelley, Philadelphia, Pa., for Wm. J. Condren, Cauff, Lippman & Co., and CLCC, A Joint Venture.

Edward J. DiDonato, Philadelphia, Pa., for Trustee.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

The applicant herein is the law firm of Ciardi, Fishbone, and DiDonato, Esquires, counsel for the Trustee. Counsel seeks an interim fee award of $71,798.25 for 525.2 hours of legal services performed for the Trustee from September 20, 1984 to October 31, 1984. For the reasons stated herein, we will approve immediate payment of interim fees in the amount of $65,763.00 to counsel over the objections of creditors.

The debtor in this case is American International Airways, Inc. ("AIA").[1] AIA filed a petition under Chapter 11 of the Bankruptcy Code on July 20, 1984. Prior to the commencement of the case and for approximately sixty (60) days after the petition was filed, AIA operated a passenger airline. On September 19, 1984, two (2) secured creditors who were lessors of air-

craft, American Financial Corporation ("AFC") and C.I.T. Corporation ("CIT"), moved for appointment of a Trustee. After an emergency hearing, the Court appointed a Trustee on September 19, 1984. The Trustee retained the law firm of Ciardi, Fishbone, & DiDonato, Esquires, on the same date.

Immediately upon taking control of the operations of the debtor, the Trustee was confronted with matters requiring urgent attention. The sense of urgency attendant to this case can best be illustrated by a description of the events preceding the Trustee's appointment.

Under section 1110(a) of the Code, a Chapter 11 debtor that is an air carrier is given a sixty (60) day grace period in which to decide whether to continue in possession of equipment by curing defaults. The automatic stay applies for sixty (60) days and may not be lifted until the expiration of the sixty (60) day period. 11 U.S.C. § 1110.

In this case, the debtor moved for an extension of the sixty (60) day period, which the Court denied on September 13, 1984. On September 14, 1984, amidst allegations of secured creditors that valuable aircraft engines and parts were being flown out of the country, the Court entered a temporary restraining order grounding all aircraft and posting security guards. A few days later, for reasons undisclosed to the Court, counsel for the debtor filed an application to withdraw from the case. On September 19, 1984, the Court modified the temporary restraining order to permit AFC and CIT to begin removing and taking possession of aircraft, aircraft engines and spare parts leased to the debtor by AFC and CIT.

As the Trustee began investigating the affairs of AIA, he found that no current books or records existed, no cash was available, there were no employees, there was no security system for parts, machinery and other assets, and there was no insur-

---

**1.** This Opinion constitutes the findings of fact and conclusions of law required by Rule 7052 of the Bankruptcy Rules.

ance. The offices of AIA had been closed by local authorities for health violations. The FAA was about to suspend the operating Certificate of AIA. A class action lawsuit for alleged securities law violations was pending in District Court against the parent company of the debtor, AIA Industries, Inc. Several state and federal investigations of AIA were pending. The Securities and Exchange Commission entered an appearance in the case and moved for appointment of an equity securities holder committee. Moreover, there was a plethora of adversary proceedings pending against the debtor in the Bankruptcy Court. Consequently, counsel for the Trustee expended a total of 525.5 hours of legal time locating, collecting and preserving assets of the estate and instituting or defending lawsuits from September 20, 1984 through October 31, 1984, the period of the instant fee application. As of the date of this Opinion, the Trustee, through the assistance of counsel, has collected approximately $2,250,000.00 in estate funds.[2]

## THE OBJECTING PARTIES

Nine (9) objections were filed to the instant fee application of counsel for the Trustee requesting allowance of interim compensation. The objecting parties include a creditor with a potential super-priority lien against the debtor's post-petition assets and creditors who hold administrative claims against the estate. The basis for the objections is that immediate payment of interim fees and costs to counsel for the Trustee would unfairly prefer counsel's claim over other administrative claims of equal priority, and in the case of the creditor with the potential super-priority lien, would unfairly prefer counsel's claim

over a claim of a higher priority. First, we will outline the objection of AFC.

AFC contends that it is the principal secured creditor of AIA, having made several pre-petition loans to AIA. Additionally, AFC alleges that it is an unsecured creditor and administrative claimant of AIA for unpaid rentals under certain aircraft leases.

Shortly after the petition was filed, AFC and AIA entered into a Cash Collateral Stipulation which the Court approved on July 31, 1984. Pursuant to the Stipulation, AFC was granted a security interest in post-petition assets of AIA and is entitled to a super-priority lien pursuant to § 507(b) of the Code to the extent that AFC has a claim under § 507(a)(1) arising from the debtor's use of cash collateral.

AFC opposes distribution of estate funds to any administrative claimant at this time for the reason that payment might impair the super-priority claim AFC *may* have under § 507(b) by virtue of the Cash Collateral Stipulation.[3] Second, AFC opposes payment of interim fees to counsel at this time because such payment would unfairly prefer counsel over holders of other administrative claims of equal priority (including AFC), *if* remaining estate funds are insufficient to pay their claims in full.

The second party objecting to the payment of interim fees is William J. Condren, Cauff, Lippman & Co., and their joint venture, CLCC, (hereinafter collectively "CLCC"). CLCC has an administrative claim against the estate in the amount of $171,495.00. On September 26, 1984, CLCC filed a motion for immediate payment of its claim, contending that a fraud had been perpetrated on it by the debtor. A hearing was held on the motion February 4, 1985. The Court reserved decision on

---

**2.** *See* Application to Increase Trustee's Bond to $2,250,000.00 filed March 8, 1985.

**3.** The superpriority provision is found in § 507(b) of the Code which states:
   If the trustee, under Section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor

has a claim allowable under subsection (a)(1) of this section arising from the stay of action against such property under Section 362 of this title, from the use, sale, or lease of such property under Section 363 of this title, or from the granting of a lien under Section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim under such subsection.

the matter and directed the parties to brief the issues. A decision has yet to be rendered on CLCC's motion because the Court is still awaiting the briefs of opposing parties.

CLCC's argument against immediate payment of interim fees to counsel for the Trustee is essentially the same as AFC's. CLCC contends that its post-petition administrative claim is entitled to priority under § 364(c)(1) of the Code and should be paid in full prior to any payment of interim compensation, or, in the alternative, CLCC's administrative claim should be paid at the same time that interim fees are paid to Trustee's counsel.

The remaining objections were filed by unsecured creditors and former employees of the debtor who oppose any distribution of estate funds prior to satisfaction of their claims.[4] These objections allege generally that the amount requested by counsel is excessive, and that the fee application reflects a duplication of services. We will deal with all of the objections raised in due course.

## DISCUSSION

Interim compensation is statutorily authorized by 11 U.S.C. § 331:

A trustee, an examiner, a debtor's attorney, or any professional person ... may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application of reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

Interim fees awarded to attorneys under § 331 must be "reasonable" based on the nature, the extent, and the value of such services, the time spent on such services,

and the cost of comparable services other than in a case under title 11. 11 U.S.C. § 330(a)(1). Attorney fees awarded under § 330(a)(1) and reimbursement of actual, necessary expenses allowed under § 330(a)(2) are classified as administrative expenses pursuant to § 503(b)(2) and are afforded priority in distribution under § 507(a)(1).

The purpose behind awards of interim fees has been explained by Collier:

The Bankruptcy Act contained no provision which authorized interim allowances of compensation or reimbursement of expenses for trustees, receivers, attorneys or other professionals. Rather, the concept of allowing interim compensation evolved as judicially created law. It was intended to alleviate economic hardship incurred by court appointed officers who might otherwise have been required to support extended engagements without any allowances of compensation or reimbursement of expenses. Generally, allowances of compensation were determined at the conclusion of the administration of a case. At that time the court could evaluate the applications filed in light of the determinative criteria including, the results achieved, the contribution of the respective applicant, the total amount available for distribution and the burden that the allowances of compensation might impose upon the particular debtor's or bankrupt's estate ....

Basically, interim compensation is peculiar to reorganization cases. As the economy precipitated larger and more complex reorganization cases which required longer periods of administration, the need for some method of compensating court appointed fiduciaries and professionals became more pressing. To assure continued performance on the part of such persons, the courts developed the concept of partial payments for services already rendered, to be considered and awarded at appropriate stages in the ad-

---

**4.** In addition to the objections of AFC and CLCC, written objections were filed by Peter Stern, Esquire, New Security Concept, Eileen Poole, Margarithe J. McEwing, Airport Limousine Service of Orlando, Inc., Aviation Comprogas Services, Inc. and Tec-Air Services, Inc.

ministration of a case. Allowances of interim compensation were based, in part, upon the premise that professionals should not be expected to finance the administration of liquidation or reorganization cases.

2 *Collier on Bankruptcy* ¶ 331.01, pp. 331–1 to 331–3 (15th ed. 1979)

Under the Bankruptcy Act, it was questionable whether interim allowances were proper. Although the Court of Appeals for the Third Circuit permitted interim allowances to alleviate hardship on the part of counsel, the Court also declined to allow the full amount sought on the basis that a full interim fee allowance led to procrastination. *See In re Imperial '400' National, Inc.,* 432 F.2d 232 (3d Cir.1970); *In re McGann Mfg. Co.,* 188 F.2d 110 (3d Cir. 1951); *In re Keystone Realty Holding Co.,* 117 F.2d 1003 (3d Cir.1941).

The Court of Appeals said in *In re McGann*:

Whether interim allowances are justified must, of course, depend on the circumstances of each case. If the duties performed by the trustee and his counsel are not substantial, interim allowances are not warranted. Where, however, a trustee or his counsel, regularly devotes a portion of his time, either daily or weekly, to the administration of the estate interim allowances may very well be necessary. (citations omitted) This is especially true where the trustee oper-ates a business; in such a case, interim allowances may be essential as an assurance of efficient management.

188 F.2d at 112.

By codifying the allowance of interim compensation in § 331, Congress eliminated the necessity of demonstrating economic hardship before a court will grant interim fees. 2 *Collier on Bankruptcy* ¶ 331.02, p. 331–5 n. 2 (15th ed. 1979).

In expressly providing for interim compensation in section 331 of the Code, Congress intended to end any doubt that the use of interim compensation was proper and discretionary with the Court. *In re*

*Robin Industries,* 16 B.R. 695 (Bankr.N.D. Ga.1982).

The Bankruptcy Judge in *In re Western Farmers Ass'n.,* 8 B.R. 539 (Bankr.W.D. Wash.1981) held that Bankruptcy Courts are no longer restricted by a doctrine of partial payment in cases under the Code. *Id.* at 541. In *Western Farmers,* the SEC objected to allowance of the full amounts requested, contending that interim fees should be well below any final allowance. The Court stated:

I feel that the long range result of adopting the SEC's position would be to drive qualified counsel away from this Court and out of the bankruptcy practice. Why would any competent firm with any sort of an established clientele spend its time working on a lengthy bankruptcy case, knowing that it might not receive full payments for its service until some indefinite time in the future, if ever? The best interest of such a firm would dictate that it spend its time and energy on behalf of non-bankruptcy clients whom it could bill and expect full payment from in the ordinary course of its practice.

*Id.* at 542.

Similarly, the Bankruptcy Judge in *Franklin New York Corp.,* No. 74–B–1428 (S.D.N.Y.) (certificate on application for interim allowances) observed that:

In (liquidation) cases such as this, it seems to me that it is an injustice to the Court appointed professionals (attorneys, accountants, trustees) to expect them to perform high quality services, often under great pressure involving extremely complex factual and legal issues and then compel them to wait many years before receiving any compensation. Practicing law in the competitive atmosphere of New York City is sufficient challenge without requiring them to be bankers as well.

██ Although the Code expressly favors and provides for interim fee awards, the Bankruptcy Judge is not empowered to make such awards without reference to a schedule of priorities. *In re Flagstaff*

*Foodservice Corp.*, 739 F.2d 73 (2d Cir. 1984).

When there are inadequate funds in an estate to pay the holders of claims of a particular class in full, the claims are paid pro rata. 11 U.S.C. § 726(b). Thus, some courts have held that it is inappropriate to award interim compensation to attorneys as an administrative expense under § 503(b) where there appears a substantial likelihood that estate funds will be insufficient to pay all administrative claims in full. *In re Robin Industries*, 16 B.R. 695 (Bankr.N.D.Ga.1982) (disbursement of interim fees shall await determination of all administrative claims and whether or not a proration among administrative claims is required); *In re Western Farmers Ass'n.*, 13 B.R. 132 (Bankr.W.D.Wash.1981); *In re National Buy-Rite*, 10 B.R. 380 (Bankr.N.D.Ga.1981); *Cf. In re Wilson Freight Company*, 21 B.R. 398 (S.D.N.Y.1982) (in an undersecured Chapter 11 case where it was probable that assets ultimately would be insufficient to satisfy secured creditors, Bankruptcy Court had jurisdiction to allow interim compensation to counsel for creditors' committee).

■ When the Trustee was appointed in the case at bench, there was less than $300,000.00 in the estate. Because the aircraft and most of the parts were leased, the actual size of the estate was unknown. Within the last six (6) months, however, the Trustee has been able to uncover and collect substantial assets so that the estate funds now total $2,250,000.00. Judging by the amount of assets collected so far, it does not appear that estate funds will be inadequate to pay administrative claims in full. Furthermore, a payment of $65,763.00 in interim counsel fees represents a small percentage of the total funds available in the estate at this time.

■ On the basis of these facts, we reject the arguments of other administrative claimants, such as AFC and CLCC, that no distribution of estate funds should be made at this time, to counsel for the Trustee. Moreover, we point out that interim fee awards are interlocutory in nature. *In re*

*Callister*, 673 F.2d 305 (10th Cir.1982). "The statute anticipates repeated application to the court for reimbursement and compensation, subjecting the award to amendment or modification at any time during the pendency of the bankruptcy proceedings." *Id.* at 306. Interim awards of compensation are within the Court's discretion. *In re Solar Manufacturing Corp.*, 190 F.2d 273 (3d Cir.1951), *cert. denied sub nom. McGirl v. Mintz*, 342 U.S. 893, 72 S.Ct. 200, 96 L.Ed. 669 (1951).

■ Interim awards of compensation are to be considered by the Court in making a final award. *Massachusetts Mutual Life Insurance Co. v. Brock*, 405 F.2d 429 (5th Cir.1968), *cert. denied*, 395 U.S. 906, 89 S.Ct. 1748, 23 L.Ed.2d 220 (1969). Interim allowances are subject to the Court's re-examination and adjustment during the course of the case, and all expenses of administration must receive the Court's final scrutiny and approval. 2 *Collier on Bankruptcy*, ¶ 331.03 (15th ed. 1981). Interim awards are refundable to the estate if it subsequently becomes necessary to pro rate administrative expenses. *In re Vermont Real Estate Investment Trust*, 26 B.R. 905 (D.Ver.1983).

■ The sole issue remaining is what effect the possible super-priority of AFC has on the Court's ability to award interim compensation to counsel for the Trustee from estate funds. An argument has been raised that some or all of the funds in the estate may be subject to the super-priority of AFC. Section 507(b) grants a super-priority to post-petition creditors in the event that the adequate protection requirements of § 361 prove to have been inadequate. 11 U.S.C. § 507(b). This super-priority claim is given priority over every other allowable administrative claim, including attorneys' fees. Therefore, AFC objects to the payment of any interim attorneys' fees in advance of a determination of its super-priority.

The Bankruptcy Court in *In re Callister*, 15 B.R. 521 (Bankr.D.Utah 1981), *appeal dismissed*, 673 F.2d 305 (10th Cir.1982),

held that interim attorney fees should be paid immediately notwithstanding the super-priority status of a creditor's claims. The parties seeking interim fee awards did not raise the question of whether any portion of their fees could be surcharged against the creditor's collateral under § 506(c). Nevertheless, the Court stated:

... Section 331 says that fees "may" be paid on an interim basis. There is a presumption, for the reasons outlined above, that they will be paid notwithstanding the existence of a superpriority. This presumption may be strengthened, for example, where a trustee or his representative who is requesting fees was installed at the behest of a creditor entitled to a superpriority. *Cf. In re Hotel Associates, Inc.,* 6 B.R. 108, 114 (Bkrtcy., E.D.Pa.1980). But it is rebuttable under appropriate equitable circumstances. *Cf.* 2 *Collier on Bankruptcy, supra* ¶ 331.01 at 331–3 ("The genesis of interim compensation is rooted in the equity powers of the bankruptcy court"). These circumstances, however, are not present in this case.

15 B.R. at 535.

On appeal, the Court of Appeals for the Tenth Circuit held that the Bankruptcy Judge's Order, granting interim fees to counsel and granting a creditor a super-priority, was interlocutory in nature. Therefore, the Court of Appeals was without jurisdiction to hear the matter. *In re Callister, supra,* 673 F.2d at 307.

The Court of Appeals for the Second Circuit, however, declined to follow *Callister* when confronted with the same issue. In *In re Flagstaff Foodservice Corp.,* 739 F.2d 73 (2d Cir.1984), the Second Circuit reversed a Bankruptcy Judge's award of interim compensation to counsel which was to be paid from encumbered collateral.

In *Flagstaff,* the Bankruptcy Court authorized the debtor-in-possession to borrow $9 million from General Electric Corporation ("GECC") in addition to a pre-petition indebtedness of $22 million. The loan was secured by a first priority lien against all of the company's assets and subject to a super-priority claim under 11 U.S.C. § 364(c). Although the debtor repaid its pre-petition debt to GECC, the reorganization efforts failed and the remaining assets in the estate were insufficient to satisfy the post-petition secured debt to GECC. The Second Circuit premised its reversal of the fee awards on a reading of the "plain language" of section 364(c) of the Code.

The Bankruptcy Court in *Flagstaff* awarded interim fees despite the presence of a possible super-priority to co-counsel for the debtor, counsel for the creditors' committee and accountants for the committee. The Court of Appeals observed that:

Attorneys may ... secure a portion of their fee in advance ... If attorneys need more encouragement than this to participate in chapter 11 proceedings, Congress, not the courts, must provide it. Under the law as it presently exists, knowledgeable bankruptcy attorneys must be aware that the priority ordinarily given to administration expenses may 'prove illusive in light of the various provisions in the Code for competing or super-priorities.' (citation omitted). Section 364(c)(1) is such a provision.

739 F.2d at 75.

It is significant for the purposes of our discussion that the *Flagstaff* Court also recognized that, under exceptional circumstances, a Bankruptcy Court may depart from the Code's priority scheme and order compensation to be paid from the collateral of an undersecured creditor. Those circumstances appear to be present in the case at bench so that the primary holding of *Flagstaff* may not be controlling here viz a viz the possible super-priority claim of AFC.

The two (2) situations under which the collateral of an undersecured creditor may be surcharged to pay compensation claims, according to the Court of Appeals in *Flagstaff,* are (1) where the professional services rendered were necessary to preserve or dispose of the collateral, providing a benefit to the secured creditor, *see* section 506(c) of the Code; and (2) where the secured creditor actually or impliedly con-

sented to assume the cost of the professional services, *see In re Hotel Associates*, 6 B.R. 108 (Bankr.E.D.Pa.1980).

In the case at bench, AFC and CIT, both secured creditors, moved for appointment of a Trustee in order to protect their position and to preserve the assets of the estate from dissipation. Although counsel for the Trustee argues that the holding of *Hotel Associates* is applicable here, we defer ruling on this issue to another day because it has not yet been determined whether the funds in the estate are subject to a security interest of AFC. However, we premise our holding in this matter on the possibility that AFC (and CIT) may have to bear the cost of counsel for the Trustee's services and expenses in the event that the estate's unencumbered assets are not sufficient to pay such expenses.

■ In summary, we will award interim fees and reimbursement of expenses to counsel for the Trustee over the objections of AFC, CLCC and other unsecured creditors. In view of the special circumstances outlined above, it would be inequitable to deny interim fees to counsel for the Trustee. Counsel is heavily involved in this case on a daily basis and has already expended significant time and effort in collecting and preserving assets. Moreover, the demands on counsel have been great and there is no telling when the activity in this case will draw to a close. Substantial assets totalling over $2,000,000.00 have been collected so far. Yet, counsel has received nothing in the way of compensation, in contrast to the ability of counsel for a debtor to obtain a retainer in advance of rendering services. Finally, there is the distinct possibility that AFC will have to bear the costs and expenses of the Trustee and his counsel, or at least a portion of them, in the event that AFC is secured by all of the assets of the estate and there are no unencumbered funds left to pay the fees and expenses of the Trustee and his counsel.

We noted at the outset of this Opinion that counsel's fee application lists 525.2 hours of legal services rendered for a total fee request of $71,798.25. Reimbursement of expenses in the amount of $264.91 is also requested. Upon review of the application, we note that counsel spent a significant amount of time in inter office conferences.

■ We have previously held that the estate should not have to bear the cost of compensating each attorney present at an inter-office conference unless the attorneys can show that the estate benefited from each attorney's special area of expertise (e.g., a tax attorney consulting with the attorney in charge of the bankruptcy case). *In re Bible Deliverance Evangelistic Church*, 39 B.R. 768, 777 (Bankr.E.D.Pa. 1984). The frequency of the inter-office conferences and the length of time each entailed are factors in the Court's decision whether to deduct time for 'excessive conferences. *Id.* In the absence of a showing by counsel of the purpose of the conferences, and why the conferences were essential to the efficient management of this case, counsel cannot receive full compensation for each attorney who was present at the conferences.

In the case at bench, we have reduced the interim fee awarded by $6,035.25 for excessive conference time, resulting in a net award of $65,763.00. Counsel may refer to Addendum B attached and also to the notations in the margins of the fee application to see which entries the Court has disallowed on the basis of excessive conference time. The Court will consider any additional information which counsel wishes to provide regarding the disallowed entries, and will make appropriate adjustments to the fee awarded at that time.

The Code provides for reimbursement of "actual, necessary" expenses under § 330(a)(2). In the past, we have held that certain types of expenses, such as photocopying, were costs of doing business and attributable to a firm's overhead, much like rental payments for office space and the salaries of clerical staff. Therefore we refused to allow reimbursement for these types of expenses. *See In re Horn and*

*Hardart Baking Co.*, 30 B.R. 938 (Bankr. E.D.Pa.1983).

When our ruling on photocopying expenses was made, there was little, if any, caselaw on this subject. Some of our colleagues have since adopted a similar approach with regard to word processing and lexis computer research, *see In re Sapolin Paints, Inc.*, 38 B.R. 807, 816 (Bankr.E.D. N.Y.1984), but the majority appear to allow reimbursement for photocopying expenses, *see e.g., In re Garnas*, 40 B.R. 140 (Bankr. D.N.D.1984).

Recently, our thinking in this area has undergone an evolution, partly because it has become difficult if not impossible to draw the line between those types of expenses which can be considered "costs of doing business" and those which the client clearly should be responsible for, such as filing fees and witness fees. If we were to disallow all expenses which can be considered "costs of doing business", we would have to disallow almost every expense applied for, including postage, telephone calls, lexis research, word processing, messenger services, transportation, meals, etc.

Furthermore, we recognize that it is typical for law firms to bill clients separately for all expenses which can be attributed to a particular client. As Bankruptcy Judge Hill aptly points out, firms engaged in the practice of bankruptcy law should not be treated any differently from the rest of the bar. *Garnas, supra,* 40 B.R. at 141. Therefore, we will now permit counsel to be reimbursed for all types of expenses, including photocopying, as long as counsel can show that such expenses were actual and necessary in a particular case.

A showing of actual and necessary cannot be accomplished merely by listing in the fee application the amount of the expenditure next to the type of expenditure. Detail must be provided to substantiate the actual and necessary nature of expenditures. For example, when claiming reimbursement for telephone calls, counsel should specify the date of each call, the person to whom the call was made, the subject matter of each call, and the amount charged for each call. This should not be difficult to do as the information should be readily available. In the case of photocopying, counsel should inform the Court of the number of copies, the cost of each copy, and provide, if possible, a breakdown of the reasons why photocopying of certain documents was necessary.

In the case at bench, counsel has listed transportation costs in the amount of $116.00 with some detail. The date and amount of each transportation expense is provided as well as an indication of the nature of the expense, e.g., taxi to AIA headquarters, train ticket, or parking. Therefore, we will allow reimbursement of $116.00 in transportation costs. No detail is provided with respect to telephone calls, postage, or filing fees. Also, the Court has been unable to determine the purpose of the $60.00 filing fee. Although there is some description of the nature of the photocopying expenses, the Court would like additional information in this regard. Counsel may file an amended application in accordance with these guidelines within thirty (30) days, at which time the Court will consider allowance of reimbursement for all expenses other than transportation costs.