In re WIEDAU'S, INC., Debtor.

Bankruptcy No. BK 86–30293.

United States Bankruptcy Court,
S.D. Illinois.

Oct. 22, 1987.

Melvin W. Trotier, Belleville, Ill., for debtor.

## MEMORANDUM AND ORDER

KENNETH J. MEYERS, Bankruptcy Judge.

### I. INTRODUCTION

This case is before the court to consider counsel for debtor's petition for attorney's fees. Some history is necessary to bring the Court's ruling on the matter into proper focus. Apparently, prior to October 1, 1986 (the date on which the undersigned became Bankruptcy Judge), applications for fees received very little scrutiny from the Court. Since October 1, 1986, this Court has taken the position that attorneys should be able to justify to the Court the time expended in bankruptcy proceedings in much the same manner they would have to account to a good client. In light of the hundreds of fee applications filed with this Court each year and the problems which are reoccuring, the Court believes it is now imperative that specific standards be enunciated which attorneys (and for that matter other professionals), must follow in preparing their fee applications.[1] The court has adopted, in large part, the same standards established by the Court in *In re Wildman*, 72 B.R. 700 (Bankr.N.D.Ill.1987). The Court will discuss those standards and will then review the fee petition in the present case.

---

1. Although this order addresses an attorney's application for fees, many of the requirements are equally applicable to other applications for professional fees.

The Court initially notes that it has wide discretion in reviewing fee applications. *Matter of U.S. Golf Corp.*, 639 F.2d 1197, 1201 (5th Cir.1981); *In re Wildman*, 72 B.R. at 705. "The standard of review on appeal of a fee award by a bankruptcy court is whether the bankruptcy judge has abused discretion." *Id.* "If no objections are raised to a fee request, the Bankruptcy Court is still not bound to award the fee as prayed. It has the independent authority and responsibility to determine the reasonableness of all fee requests, regardless of whether objections are filed." *Id.* Finally, the burden of proof in all fee matters rests on the applicant. *Id.* at 708; *In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr.N.D.Ill.1985).

## II. STANDARDS OF REVIEW

In reviewing applications for attorney's fees, the Court must consider three broad areas. Those areas were described by the *Wildman* court as follows:

1. Are the services that are the subject of the application properly compensable as legal services?

2. If so, were they necessary and is the performance of necessary tasks adequately documented?

3. If so, how will they be valued? Were the necessary tasks performed within a reasonable amount of time and what is the reasonable value of that time?

*In re Wildman*, 72 B.R. at 704–05.

### A. *Legal Services*

█ The services that are the subject of the fee application must be compensable as legal services. In bankruptcy cases, the question of whether services are "legal services" most often arises when an attorney acts as both trustee *and* attorney for the trustee. It is this Court's position that "an attorney is never entitled to professional compensation for performing duties which the Bankruptcy Code imposes upon the trustee." *Id.* at 706 (citations omitted).

**2.** The Court adopts, with certain exceptions, many of the same requirements established by the *Wildman* court at 708–09. References to

This holding is premised upon section 328(b) of the Code, which provides:

[T]he court may allow compensation for the trustee's services as such attorney ... only to the extent that the trustee performed services as attorney ... for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney ...

11 U.S.C. § 328(b). Services that a trustee normally performs for an estate with the assistance of counsel will be compensated in accordance with section 326 of the Code. Therefore, "fee applications submitted by counsel for trustees must list time spent and services rendered as the trustee separate from time spent and services rendered as attorney for the trustee." *Id.* at 707.

### B. *Actual and Necessary Services*

Section 330 of the Bankruptcy Code provides that the Court may award to professionals "reasonable compensation for actual, necessary services" rendered by such professionals. 11 U.S.C. § 330(a)(1). Additionally, Rule 2016(a) provides, in part:

A person seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.

"The primary objective of any fee petition is to reveal sufficient data to enable the Court to determine whether the services rendered were reasonable, actual and necessary." *In re Wildman*, 72 B.R. at 707–08. Therefore, all fee applications will be reviewed and evaluated in accordance with the following requirements:[2]

█ 1. *Itemized Daily Entries.* A proper fee application must list each activity, its date, the attorney who performed the work, a description of the nature and substance of the work performed, and the time spent on the work. Records which

other case decisions, cited in the *Wildman* opinion, have been omitted.

give no explanation of the activities performed are not compensable.

2. *Particular Entries.*

■ *Telephone Calls.* An entry of "telephone call" or even "telephone call with Mrs. X" is insufficient. The purpose of the conversation, and the person called or calling, must be clearly set out.

■ *Conferences.* Similarly, an entry of "conference" or "meeting," "conference with X" or "conversation with X" is insufficient. The entry should at the very least note the nature and purpose of the various meetings and conferences as well as the parties involved.

■ *Drafting Letters or Documents.* Time entries for drafting documents should specify the document involved and the matter to which it pertains. Time entries for drafting letters should briefly set forth the nature of each letter and to whom it was addressed.

■ *Legal Research.* Entries of "research," "legal research" or "bankruptcy research" are insufficient. The nature and purpose of the legal research should be noted. In addition, the entry should indicate the matter or proceeding for which the research was utilized.

■ *Other Entries.* Time entries for other activities, such as court appearances, preparation for court appearances, and depositions should also briefly state the nature and purpose of the activity.

■ 3. *"Lumping."* Applicants may not circumvent the minimum time requirement or any of the requirements of detail by "lumping" a number of activities into a single entry. Each type of service should be listed with the corresponding specific time allotment. Otherwise, the Court is unable to determine whether or not the time spent on a specific task was reasonable. Therefore, services which have been lumped together are not compensable.

■ 4. *Abbreviations.* If abbreviations are used in the itemized daily entries, they must be explained somewhere in the application. Unexplained abbreviations will render the time entry not compensable.

■ 5. *Prior Fee Applications.* In addition to the above requirements, the application should state those fees, if any, that were previously approved by the Court. Such entry shall include the date of the approval of the prior application or applications and the amount of fees and expenses approved.

While the above requirements help to establish that the services performed were "actual," the Court must also determine that the services were necessary. This determination will be made in accordance with the following requirements:

1. *Individual Responsibility.* Generally, attorneys should work independently, without the incessant "conferring" that so often forms a major part of many fee petitions. Examples of the kind of work for which only one attorney will be compensated are:

■ *Conferences.* While some intraoffice conferences may be necessary, no more than one attorney may charge for it unless an explanation of each attorney's participation is given.

■ *Court Appearances.* When more than one attorney appears in court on a motion or argument or for a conference, no fee should be sought for non-participating counsel. Attorneys should not circumvent this requirement by merely rotating or taking turns participating at a single court appearance.

*Depositions. Absent special circumstances,* one attorney is sufficient to handle any deposition or § 2004 examination.

■ 2. *Appropriate Level of Skill.* Senior partner rates will be paid only for work that warrants the attention of a senior partner. A senior partner who spends time reviewing documents or doing research a beginning associate could do will be paid at the rate of a beginning associate. Similarly, non-legal work performed by a lawyer which could have been performed by less costly non-legal employees should

command a lesser rate (*e.g.*, copying or delivering documents).

■ **3.** *Legal Research.* Counsel who are sufficiently experienced to appear before this Court are presumed to have an adequate background in the applicable law. While it is recognized that particular questions requiring research will arise from time to time, no fees will be allowed for general research on law which is well known to practitioners in the area of law involved.

■ **4.** *Document Review.* Fees are not allowable for simply reading the work product of another lawyer as a matter of interest. Only if such review is required to form some kind of response or to perform a particular task in the case will document review be compensable.

■ **5.** *Routine Services.* Some courts have held that "routine and ministerial services," that is, telephone calls and correspondence, should be compensated at a lower rate than "truly legal services," such as litigation, research and document drafting. In this Court's view, this is an unwarranted distinction which is contrary to the fundamental notion that counsel should be encouraged to resolve matters informally whenever possible in order to avoid costly litigation.

■ **6.** *Fee Petition Preparation. In Wildman,* the court held that attorneys should be compensated for time spent in preparing fee applications. *Id.* at 710. However, other courts have held that fee petition preparation time is not compensable. *See, e.g., In re Wilson Foods Corp.,* 36 B.R. 317, 323 (Bankr.W.D.Okla.1984). This Court agrees. Time spent preparing a fee petition "is not properly a service rendered on behalf of the debtor-estate, but a necessary expense of doing business." *Id.* at 323. Therefore, absent unusual circumstances, such fee requests shall be denied.

**C.** *Amount of Compensation.*

■ In determining the amount of compensation to be awarded, the Court will consider 1) whether the tasks were performed within a reasonable number of

hours, and 2) whether the requested hourly rate is reasonable. These factors, which were originally established in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), have been adopted by other bankruptcy courts, including the *Wildman* court. *See In re Wildman,* 72 B.R. at 712. Determining the reasonableness of the number of hours and the hourly rate requires further consideration of the following specific factors: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill necessary to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee for similar work in the community; 6) time limitations imposed by the client or the circumstances; 7) the experience, reputation and ability of the attorney; 8) the "undesirability" of the case; 9) the nature and length of the professional relationship with the client; and 10) awards in similar cases. *Johnson,* 488 F.2d at 717–719; *In re Wildman,* 72 B.R. at 712. Upon consideration of these factors, the Court will decide whether the amount of compensation requested in the fee petition is in fact reasonable or whether the stated fee should be decreased.

## III. APPLICATION OF STANDARDS TO THE PRESENT CASE

■ In reviewing the instant fee petition and its history, the Court cannot conclude that it even begins to meet the standards described above. It would not well serve the Court's time to specify the deficiencies for they are too numerous. Some elaboration is, however, helpful in understanding the task faced by this Court in reviewing such applications.

On July 17, 1986 counsel filed a fee petition for $2,500.00, which was not substantiated by any itemized time. He was advised by this Court that such a fee petition would no longer be approved. Apparently, in response to that requirement, he now itemizes his time at $8,450.00. Oh, the benefits of itemization. It might be argued that substantial time has been expended since July 1986 on this case. However, a review

of the itemized bill and the court record does not support this argument. In fact, it is difficult to support most of the work allegedly performed after March 17, 1986, the date on which the bankruptcy petition was filed.

This was a Chapter 7 proceeding in which the Trustee pursued the assets of the estate. Counsel for the debtor appears to have pursued matters which did not benefit the estate. For example, there are numerous entries regarding Judge Fiss, Judge O'Brien and Judge Kernan. These are not bankruptcy judges and the Court can only assume that they are state judges, and that this time somehow relates to state court proceedings. There is no showing that such proceedings benefited the estate. Further review of the fee application reveals many more questionable entries, as demonstrated by the following examples:

| | |
|---|---|
| 3/14/86 | Letter to Hoelscher—sent 1985 Wage Statement and copy of payments from Local 534; best can do—(20) |
| 3/19/86 | Notice of 341 Local 534 returned; also Toledo Scale, St. Louis; Assist of Credit, Charles Seper, Cheryl Hoffman, Sherri Foran and Dennis Haller —1 (20) |
| 4/2/86 | Bakery Union, Health, Welfare and Benefit invoices for Feb. 1986 & March, 1986—(30) |
| 4/3/86 | Illinois Bell called re telephone number 235-4011—(15) |
| 5/2/86 | Larry Henson called—(15) |
| 6/16/86 | Copy letter from Kunin re private sale—(15) |
| 7/14/86 | Conference with Gary; All foregoing —(60) |
| 8/4/86 | Telephone call from IRS; If get records showing sales and expenses, compute tax; Gary said give Steve to go—(20) |
| 12/12/86 | Telephone Samson; What's this all about? Fighting it—(20) |
| 1/28/87 | Telephone from Elliott; * not know, me gone; call Gary; What arrangements with IRS—(5) |
| 2/28/87 | * What happened on Monte Carlo— (15) |

Most of these entries give the Court no indication as to why the services were rendered or how the services benefited the estate. Certain entries are simply unexplainable, as evidenced by such phrases as "best can do," "fighting it," and "What happened on Monte Carlo." Some of the entries refer to individuals who are not identified anywhere in the petition, while other entries indicate unreasonable amounts of time spent on particular activities. Fifteen minutes to copy a letter is not justified under any circumstances. Perhaps the most shocking entry appears at 8/16/87: "While itemizing services, found letter to Samson with checks for Wiedau, totaling $8090.33 from distributors and lotto—(30)." Samson is the Trustee. Apparently, counsel, when itemizing his time, discovered some checks that he failed to turn over to the Trustee and he is now charging the estate one half hour to rectify his mistake. (The Trustee has subsequently advised the Court that due to the delay, some of these checks may not be collectible.) The Court is appalled by such conduct. To have neglected to perform his duties is bad, to seek to be rewarded for such neglect is abhorrent.

Therefore, the Court will allow fees as follows:[3] $2,500.00 for services rendered, minus 1) payments previously received and 2) any checks payable to the Trustee after discovery on August 16, 1987 that are not now collectible.

---

**3.** The Court is inclined to reject the application in its entirety but has elected not to do so for several reasons: (1) it is obvious counsel has expended some time which benefited the estate (2) the Court lacks the time to consider further applications by petitioner (3) because of past practices and lack of clearly enunciated standards some deference has been granted in this case. Let counsel and other professionals be admonished that the standards set forth in this order will be strictly adhered to in the future. The duties of the Court include reviewing fee applications, but not rewriting applications. Future applications not in compliance will be summarily rejected.