In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2770

In the Matter of:  Sheldon Bond,

Debtor.

Appeal of:  Vicki A. Dempsey

Appeal from the United States District Court
for the Central District of Illinois.
No. 99-3146 Richard Mills, Judge.

Argued March 2, 2001--Decided June 20, 2001


   Before Cudahy, Easterbrook, and Rovner,
Circuit Judges.

   Cudahy, Circuit Judge.  Vicki Dempsey
represented debtors in four bankruptcy
cases before Central District of Illinois
courts. In each case, Dempsey requested
attorney's fees in excess of $1,000, the
Central District's presumptive attorney's
fee limit for Chapter 13 bankruptcy
cases. However, the bankruptcy court
found that Dempsey failed to justify fees
in excess of the $1,000 limit in any of
her cases, and thus limited her fee
awards to $1,000 in each case. Dempsey
appealed to the district court. Following
a convoluted series of procedural moves
(involving a remand to the bankruptcy
court for clarification and the filing by
Dempsey of two "motions to reopen appeal"
in the district court), the district
court "affirmed" the bankruptcy court's
fee award by denying Dempsey's second
motion to reopen appeal.

I.  BACKGROUND

   Two years ago, Dempsey first appeared
before this court to challenge the
Central District's procedure for awarding
fees to Chapter 13 bankruptcy attorneys.
In In the Matter of Kindhart, 160 F.3d
1176 (7th Cir. 1998) [hereinafter
Kindhart I], Dempsey applied to the
bankruptcy court for--but was denied--
fees in excess of what at the time was an
$800 presumptive fee limit throughout the
Central District./1 The district court
affirmed the $800 fee award, and Dempsey
appealed to this court. Finding the $800

limit an abuse of discretion, this court reversed and directed the district and bankruptcy judges of the Central District to reexamine the manner in which they awarded fees to Chapter 13 bankruptcy attorneys. In response to our order, the district and bankruptcy judges agreed to raise the Chapter 13 presumptive fee limit to $1,000; to maintain a uniform presumptive attorney's fee limit for Chapter 13 bankruptcy cases throughout the district; and to review the presumptive limit every 24 months. See Order of the District Court for the Central District of Illinois at 2 (Dec. 22, 1998). On remand, Dempsey's fees were adjusted to reflect the new base fee, but she still felt short-changed and once again appealed to this court. We held that the new $1,000 fee limit was "fair and reasonable," and thus did not modify Dempsey's new fee award. See In the Matter of Kindhart, 167 F.3d 1158, 1159 (7th Cir. 1999) [hereinafter Kindhart II].

Armed now with four new cases, Dempsey attempts to challenge once again the Central District's presumptive fee limit. In each of these cases, Dempsey filed motions in the bankruptcy court seeking fees that exceeded the new $1,000 limit by amounts ranging from $166 to $309. In these motions, Dempsey presented detailed records of the amount of time she had spent on each case (totaling approximately 10 to 12 hours per case), and reported that she had billed this time at the rate of $110 per hour.

Following a hearing on these motions (which was attended by Dempsey's partner, but not by Dempsey herself), the bankruptcy court ruled that Dempsey had failed to justify in any of her four cases a fee in excess of the $1,000 presumptive fee limit. Noting that Dempsey bore the burden of establishing the reasonableness of her fees, the bankruptcy court maintained that it could not conclude that the $110 hourly rate was reasonable because "there are experienced Chapter 13 bankruptcy attorneys practicing in the Quincy area whose hourly rate is in the $90 to $100 per hour range." See, e.g., In re Hatfield, No. 95-72240, slip op. at 6 (Bankr. C.D. Ill. May 7, 1999). Further, because Dempsey's cases were some of the "more simple and straightforward that the

Court and Dempsey have seen," the court believed that Dempsey "would be overcompensated by an award of attorney fees above the $1,000 threshold." Id. Accordingly, the bankruptcy court limited Dempsey's fee to $1,000 in each case.

Dempsey appealed to the district court. That court consolidated the four cases and decided the newly consolidated case on the briefs submitted by Dempsey and the trustee. On December 8, 1999, the district court entered the following judgment in each case:

IT IS ORDERED AND ADJUDGED pursuant to Order entered by The Honorable Richard Mills, the judgment of the bankruptcy court for the Central District of Illinois is VACATED, and this case is REMANDED to the bankruptcy court for an elaboration and a more detailed explanation as to why that court denied Appellant's motion for approval of additional fees. Case Closed.

Dempsey v. United States Bankruptcy Court (In re Hatfield), No. 99-3144 (Bankr. C.D. Ill. Dec. 8, 1999); Dempsey v. United States Bankruptcy Court (In re Huber), No. 99-3145 (Bankr. C.D. Ill. Dec. 8, 1999); Dempsey v. United States Bankruptcy Court (In re Bond), No. 99-3146 (Bankr. C.D. Ill. Dec. 8, 1999); Dempsey v. United States Bankruptcy Court (In re Epperson), No. 99-3147 (Bankr. C.D. Ill. Dec. 8, 1999).

More than four months after the district court's remand, the bankruptcy court still had not entered a new judgment. Frustrated by the delay, Dempsey filed a "motion to reopen appeal"/2 in the district court on April 20, 2000, asking that the district court allow her requested fees in their entirety, establish local bankruptcy attorney's fee rules for all judges in the Central District and provide any other appropriate relief. Before the district court could address the merits of Dempsey's motion to reopen appeal, the bankruptcy court ruled.

Not surprisingly, the bankruptcy court once again limited Dempsey's fees to $1,000 per case. In addition to restating its prior reasons for denying Dempsey's excess fee requests, the bankruptcy court's new opinion set forth numerous

general conclusions, but few specific factual findings. Among the more specific new findings were the following. First, the court complained that Dempsey had only produced an "unverified itemization setting forth her time expended and services rendered." In re Bond, et. al, Nos. 97-74395, 98-70007, 95-72240, 98-73553, slip op. at 2 (Bankr. C.D. Ill. Apr. 27, 2000). Second, the bankruptcy court found that Dempsey failed to adequately delegate non-legal work to non-attorney members of her staff. As a result, the bankruptcy court believed that at least some of the hours expended by Dempsey should have been billed at a staff rate, rather than at her higher attorney's rate. Third, the bankruptcy court alleged that "Dempsey ha[d] never filed an application to be hired by the estate as required by Section 330 of the Bankruptcy Code . . . . Of more concern, she ha[d] never sought authority of the Court to represent the estate post-confirmation." Id. at 12. From the record, it appears that Dempsey was given no opportunity to respond to these concerns (although some of them were raised for the first time in the bankruptcy court's second opinion) before the bankruptcy court once again denied her fees.

Because the bankruptcy court finally ruled before the district court could address Dempsey's motion to reopen appeal, the district court denied Dempsey's motion to reopen appeal as moot. However, the district court directed Dempsey in an order dated May 2 to file another motion (but providing no time limit for doing so) if "she continues in her position that these cases should be reopened." In re Bond, No. 99-3146, slip op. at 2 (C.D. Ill. May 2, 2000). In accordance with this directive, Dempsey filed a second motion to reopen appeal in the district court on May 11, 2000, more than 10 days after the bankruptcy court entered its final order. This motion, which sought to have the district court review the bankruptcy court's decision to deny her fees, is best viewed as a short appellate brief, or perhaps, if generously construed, a notice of appeal. Finding the case "ripe for adjudication," In re Bond, 249 B.R. 891, 894 (C.D. Ill. June 29, 2000), the district court denied Dempsey's second motion to reopen appeal on the merits,

effectively affirming the bankruptcy court's final order. Dempsey now appeals to this court.

## II. DISCUSSION

On appeal, Dempsey argues that the district court erred by refusing to award the requested fees. Before we are able to address the merits of Dempsey's argument, we must first address the intervenor trustee's contention that we may not exercise jurisdiction over this cause--a problem that arises out of the convoluted procedure that Dempsey used (partially at the district court's direction) to appeal the bankruptcy court's decision on remand. We therefore begin with the "always stimulating and hopefully fruitful consideration of technical jurisdictional points." Fruehauf Corp. v. Jartran, Inc. (In re Jartran, Inc.), 886 F.2d 859, 866 (7th Cir. 1989).

## A. Jurisdiction

Under 28 U.S.C. sec. 158, a party may appeal the final judgment of a bankruptcy court to an appropriate district court. However, in order to perfect the appeal (and provide the district court with jurisdiction), the party must file a notice of appeal with the clerk of the bankruptcy court within 10 days of the bankruptcy court's decision. See Fed. R. Bankr. P. 8002(a). Rule 8002(a) describes conditions precedent that are "mandatory and jurisdictional." See Stelpflug v. Federal Land Bank of St. Paul, 790 F.2d 47, 49 (7th Cir. 1986); see also In re Schultz Mfg. Fabricating Co., 956 F.2d 686, 689 (7th Cir. 1992) (district court deprived of jurisdiction when appellant fails to file timely notice of appeal).

In this case, Dempsey and the district court appear to have agreed to waive the formalities of the Federal Rules of Bankruptcy Procedure. When Dempsey appealed the bankruptcy court's decision following the district court's remand, she did not do so by filing a notice of appeal in the bankruptcy court within 10 days of the court's decision. Instead, she filed a motion to reopen appeal in the district court, more than 10 days after the bankruptcy court's decision. In response to this novel procedure, the intervenor trustee argues that the district court did not have jurisdiction

over Dempsey's appeal because her motion: (1) was not filed with the clerk of the bankruptcy court, (2) was not a notice of appeal, and (3) even if it was a notice of appeal, was not filed within the 10-day window provided by Rule 8002(a) (nor did Dempsey seek an extension of the filing time under Rule 8002(c)). Because any one of these alleged defects can deprive the district court of jurisdiction, we devote the bulk of our discussion to the issue of timeliness, as did the parties in their briefs.

Dempsey attempts to refute the trustee's argument by noting that when the district court denied her first motion to reopen appeal, it explicitly told her to file another motion if "she continues in her position that these cases should be reopened." In light of this ruling, Dempsey argues that the district court properly exercised jurisdiction over her appeal because it specifically assured her in its ruling on her first motion that she could file a new motion if she was dissatisfied with the bankruptcy court's decision on remand. Even if the district court could not derive jurisdiction from its assurances to Dempsey, she believes that another, independent, basis for jurisdiction lies in the fact that the district court implicitly retained jurisdiction over the case when it remanded the case to the bankruptcy court for further elaboration. We address, and reject, these arguments in turn.

1. The "Unique Circumstances" Doctrine

Dempsey's first argument reduces to a claim that the happenings below call for application of "a narrow exception to the general rule prohibiting an untimely appeal . . . known as the 'unique circumstances' doctrine." Varhol v. National R.R. Passenger Corp., 909 F.2d 1557, 1561 (7th Cir. 1990) (en banc). The unique circumstances doctrine was first recognized in Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc., 371 U.S. 215 (1962), which held that a court of appeals should defer to a district court's finding of excusable neglect under then-Federal Rule of Civil Procedure 73(a) when a party relies on the district court's erroneous extension of time to file a notice of appeal. Two

years later, the doctrine was extended by Thompson v. INS, 375 U.S. 384 (1964), in which the Supreme Court held that "unique circumstances were present because the district court had [erroneously] ruled that the motion for a new trial was filed in 'ample time' and the party, relying on that determination, believed that the time for taking an appeal would not continue to run pending final disposition of the motion." 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure sec. 1168 at 501 (2d ed. 1987).

Subsequent Supreme Court decisions have narrowed the unique circumstances doctrine to the point where its continued vitality is in question. See, e.g., Varhol, 909 F.2d at 1562. Nonetheless, the doctrine survives, although we only apply it as follows: "when a party performs 'an act which, if properly done, postponed the deadline for filing an appeal,' and the party relied on the district court's conclusion that the act had been properly done, the appeal is timely if filed within the mistaken new deadline." Varhol, 909 F.2d at 1562 (quoting Thompson, 375 U.S. at 387). In addition, the doctrine applies only when a party has received "specific assurance by a judicial officer" that the necessary act has been properly done. Osterneck v. Ernst & Whinney, 489 U.S. 169, 179 (1989).

Here, the "unique circumstance" relied upon by Dempsey is the district court's order denying her first motion to reopen appeal. As noted, the order contains one sentence which states that the district court is denying Dempsey's first motion to reopen appeal, but that she can file another motion if "she continues in her position that these cases should be reopened." In light of Green v. Bisby, 869 F.2d 1070, 1072 (7th Cir. 1989), which held that a minute order does not constitute an affirmative representation, it is difficult to interpret the one sentence in the district court's order here as the kind of "specific assurance from a judicial officer" that Osterneck contemplated as allowing for an exception to otherwise strict notice of appeal rules. This is especially true because Dempsey--unlike the parties in other "unique circumstance" cases--did not even request an extension of time from the court./3 Thus, the district court did

not enter its order with the intent of assuring Dempsey of the proper timing for filing an appeal.

More importantly, even if one sentence of a judge's order could generally constitute an assurance that a motion to reopen appeal would adequately substitute for a proper notice of appeal, the order at issue here does not contain any "specific assurance" regarding the timeliness of Dempsey's action. Instead, the order merely states that Dempsey's "[first] motion [to reopen appeal] is moot and that if she continues in her position that these cases should be re-opened, she must file a new motion." It is thus difficult to conclude that the district court intended to grant Dempsey an extension of time and that Dempsey relied on this extension, as required by Varhol. Instead, the fact that the district court's order suggested no time limit might have caused Dempsey to look at the Federal Rules of Bankruptcy Procedure, where she might have discovered the proper procedure for filing a valid notice of appeal. Accordingly, the district court's order does not constitute the type of specific assurance that triggers the "unique circumstances" doctrine.

### 2. Retained Jurisdiction

Dempsey also argues that the district court retained jurisdiction over this cause when it first remanded to the bankruptcy court for an elaboration of the bankruptcy court's reasoning. This would be an easy argument to make had the district court explicitly stated that it was retaining jurisdiction during the proceedings on remand, the method used by most courts in this circuit when they wish to exert a continuing supervisory role over a dismissed case. See, e.g., Kindhart I, 160 F.3d at 1179. Here, however, the court took the road less traveled, acting as if it had retained jurisdiction even though nothing in the court's actions at the time it remanded Dempsey's case really indicated an intent to do so. We must thus determine whether the district court somehow implicitly retained jurisdiction over Dempsey's case.

Of most help to our determination is

McCall-Bey v. Franzen, 777 F.2d 1178 (7th Cir. 1985). In McCall-Bey, a prison inmate's case was dismissed with prejudice after the inmate entered into a settlement agreement with defendant prison officials. Subsequently, the inmate complained to the district court that the settlement agreement was not being adhered to, and the district court ruled on the merits. On appeal, we held that the district court only had jurisdiction to entertain the inmate's complaint if the district court had exercised a "deliberate retention of jurisdiction." Id. at 1190.

Unfortunately, the district court in McCall-Bey did not explicitly retain jurisdiction when it dismissed the inmate's suit. Nonetheless, we found that the district court had retained jurisdiction, employing reasoning that is worth quoting at some length:

[W]e know that settlements between prisoners and prison officials often contemplate a continuing supervisory role for the federal court[,] and we know that when the plaintiff wrote his letter to the judge, the judge forthwith characterized it as a petition to enforce the agreement and proceeded to do so. The judge would not have been likely to grant such a petition in a case over which he had no jurisdiction because he had dismissed the case outright months earlier. His response is therefore some evidence that he had indeed intended to make his dismissal, though outright in form, conditional in substance . . . .

Id. at 1189. Thus, two factors primarily motivated our finding in McCall-Bey: (1) the continued role for the court that was contemplated after dismissal and (2) the court's acting as if it had retained jurisdiction./4 Because these factors con-stitute the bare minimum requirements for a finding of retained jurisdiction, see id., both factors must be present for a district court to implicitly retain jurisdiction.

Here, the McCall-Bey conditions are not completely satisfied. Unlike settlement agreements, remands for clarification do not necessarily contemplate further proceedings at the appellate level. For example, we have stated that when a district court finds that the Social

Security Administration has failed to articulate a basis for its decision and remands to the agency to rectify this deficiency, the hope is that the remand order is sufficiently definitive to "enable the dispute to be finally resolved on remand" without recourse to another appeal. Richmond v. Chater, 94 F.3d 263, 268 (7th Cir. 1996); see also Forney v. Apfel, 524 U.S. 266, 270 (1998) (agreeing with court of appeals' determination that "it would be 'error for the district court to attempt to retain jurisdiction' after remanding the case" for further proceedings pursuant to sentence four of 42 U.S.C. sec. 405(g)). The district court clearly entertained a similar hope here. At the time it remanded Dempsey's cases to the bankruptcy court, the district court vacated the bankruptcy court's original judgment, leaving open the possibility (however remote) that the bankruptcy court would rule in Dempsey's favor on remand. Further, the district court declined to entertain Dempsey's first motion to reopen appeal even though the bankruptcy court had ruled against Dempsey on remand, asking her to file a second motion to reopen appeal only if she continued to disagree with the result below. Thus, while the district court's ruling on the merits in response to Dempsey's second motion to reopen appeal does at least partially indicate a belief that it had retained jurisdiction, the balance of the district court's actions do not rise to the kind of "deliberate retention of jurisdiction" that must be shown when a court fails to explicitly retain jurisdiction at the time it remands a case.

B.  Further Matters

   Because the district court erroneously asserted jurisdiction over this cause, the merits of Dempsey's appeal are not before us. Nonetheless, the happenings below raise several important concerns. Some of these concerns are so fundamental that we conclude by briefly touching on a few of them.

   First, even if we had reached the merits of Dempsey's appeal, we would likely have upheld the lower courts' decision to deny her request for excess fees. Attorney fee awards are reviewed for an abuse of discretion, see Munson v. Milwaukee Bd.

of Sch. Dirs., 969 F.2d 266, 269-70 (7th Cir. 1992), and it would have been difficult to conclude that the lower courts abused their discretion by limiting Dempsey's fees in these cases, especially in light of the valid concerns raised by the bankruptcy and district courts about the propriety of Dempsey's requests. For example, Dempsey billed all of the work she did in connection with each case--including work that should have been done by her non-legal staff--at her hourly rate. As noted by both the bankruptcy judge and the district court judge, attorneys may not bill non-legal tasks (such as typing) at the rate commanded by an attorney, and it was inappropriate for Dempsey to do so. See, e.g., In re Wildman, 72 B.R. 700, 727 (Bankr. N.D. Ill. 1987). Accordingly, regardless of whatever problems existed with the Central District's handling of Dempsey's fee request, Dempsey's request had its own share of problems that would have prevented us from finding an abuse of discretion in the Central District's decision to deny her some of her requested fees.

However, in spite of Dempsey's failure to obtain the fees she requested, we note that she has set forth several reasonable arguments regarding the manner in which her fee requests were handled. For example, the bankruptcy court never provided her with an opportunity to address its concerns with her billing methods prior to ruling on her request, choosing instead to surprise her with these concerns in its final opinion (by which time Dempsey could no longer rebut the bankruptcy court). In its final opinion, the bankruptcy court makes much of the fact that Dempsey sent her partner in her stead at the hearing on attorney's fees, but Dempsey's partner was just as capable of hearing the bankruptcy court's concerns as was Dempsey. The bankruptcy court did not raise any concerns with Dempsey's partner, and Dempsey's partner thus rested on the motions, a perfectly understandable decision given that no one-- not the bankruptcy court, not the trustee, not any of the debtors--had objected to Dempsey's fee request. Because of this treatment, Dempsey has requested that we require the Central District to adopt the rule of NAACP v. City of Evergreen, Ala., 812 F.2d 1332 (11th Cir. 1987). In NAACP, the Eleventh

Circuit held that a court "should give the [fee] applicant an adequate opportunity to respond to the court's concerns regarding the fee application and to correct perceived inadequacies in that application before making its decision. This is particularly necessary in the situation when the fee application is unopposed." 812 F.2d at 1338. We agree that this seems to be a useful approach and suggest that the judges of the Central District bear it in mind when deciding future fee applications.

Also puzzling is the bankruptcy court's characterization of Dempsey's signed fee application as unverified. The following reasoning is apposite:

The Bankruptcy Rules neither require nor provide for the verification of fee applications. Compare Bankruptcy Rule 2016 with Bankruptcy Rule 9011(b). See also former Bankruptcy Rules 219(a) and 911(b). Nonetheless, the practice has developed in this and other jurisdictions of submitting verified applications for allowance of compensation and reimbursement of expenses. A verification, as used in connection with fee applications in bankruptcy cases, is nothing more than a confirmation of the truth and correctness of the time records submitted to the Court. Its object is to assure the good faith and authenticity of those records. A verification is not a substitute for testimony in support of a contested fee application, nor does it limit the Court's inquiry as to the services rendered or reasonableness of the fee sought. In this Court's view, the signature of the attorney or other professional who submits a fee application constitutes a certificate by him of the correctness of his time records of services actually rendered. See Bankruptcy Rule 9011(a). A verification is not required in order to impress upon an attorney's conscience the necessity of truthfulness in the matters set forth in the fee application.

In re Jensen-Farley Pictures, Inc., 47 B.R. 557, 581-82 (Bankr. D. Utah 1985). Accordingly, Dempsey's signature on her fee application ought to suffice for the purpose of establishing the truthfulness of her billing records. Of course, the bankruptcy court may question Dempsey (or her partner) regarding her records, but

the fact that her submitted records were unverified ought not, on its own, be fatal to Dempsey's fee application.

We are perhaps most concerned that the Central District seems not to be adhering to its own bankruptcy fee order, which we approved in Kindhart II. As noted, that order required the Central District to establish a presumptive fee limit that would be uniform throughout the district and reviewed every two years. The Central District does not appear to be adhering to either of these conditions. Dempsey represents that, at the time she filed her initial brief in this matter, the courts in Danville and Peoria had already raised their presumptive fee limits to $1,500. With the Springfield court's limit apparently still at $1,000, the Central District is not applying a uniform presumptive fee limit in each of its bankruptcy courts. In addition, Dempsey represented at oral argument that, while she was not entirely certain, she believed the judges of the Central District had not met in December or thereabouts to review the $1,000 presumptive fee limit, as mandated by the order's promise to review the fee limit every two years. We noted in Kindhart II that "[i]t can be expected that the judges will consider any future bankruptcy fee issues which may arise from time to time, including those mentioned by appellant in her response, and, if appropriate, will make any needed adjustments." 167 F.3d at 160. We continue to hold to this expectation and trust that the Central District will act quickly to comply with its own order.

We conclude by requesting that Dempsey and the judges attempt to reach a truce, for it is apparent from both parties' documents that neither appropriately respects the other. As we hope we have shown, both parties have raised valid points during the course of this litigation. There was thus no need for Dempsey to threaten the district court with "another trip to Chicago" if it did not reverse the bankruptcy court. See Memorandum in Support of Motion to Reopen Appeal and Response to Bankruptcy Court's Order of April 27, 2000 at 2 (May 11, 2000). We are sure that the judges of the Central District do not enjoy--nor do they deserve--these sorts of threats, no matter how aggrieved Dempsey feels by

their rulings. Nonetheless, Dempsey's frustration is understandable given the Central District's apparent inability to follow its agreed-upon method of determining fees. We trust that these passions may ebb once Dempsey begins billing her services at appropriate rates and the judges before whom she appears adhere to their own order.

III.  Conclusion

   Because the district court lacked jurisdiction to entertain Dempsey's appeal, we vacate the district court's decision to deny her second motion to reopen appeal, dated May 11, 2000, and remand with instructions to dismiss the motion for lack of jurisdiction.

Vacated and Remanded,
with Instructions.

FOOTNOTES

/1 The Central District holds court in six places: Champaign/ Urbana, Danville, Peoria, Quincy, Rock Island and Springfield. However, the District maintains bankruptcy courts only inDanville, Peoria and Springfield.

/2 Dempsey's use of motions to reopen appeal is odd, and her motions are difficult to characterize, due in no small part to the fact that none of her motions cites a statute or procedural rule that grants a party the right to request the reopening of an appeal. Our best guess is that Dempsey was relying upon 11 U.S.C. sec. 350(b), which allows a case to be reopened "in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." See also Fed. R. Bankr. P. 5010. However, a review of sec. 350(b), and the case law interpreting it, shows that it is an inappropriate vehicle for the purposes for which Dempsey was apparently employing it. Accordingly, we treat Dempsey's motions to reopen appeal as what they really were. Thus, her first motion to reopen appeal, which requested that the district court enforce the terms of its remand, is roughly equivalent to a writ of mandamus issued by an appellate court.

/3 Even if Dempsey had requested an extension of time from the district court, she would have been in error; Federal Rule of Bankruptcy Procedure 8002(c) only allows the bankruptcy court to grant extensions of time for the filing of notices of appeal.

/4 We note that McCall-Bey may be providing too lenient a standard. Kokkonen v. Guardian Life

Ins. Co., 511 U.S. 375, 380-81 (1994), appears to require more than McCall-Bey did from a district court wishing to retain jurisdiction--in particular, implying that the court's retention must be express (either a statement in the judgment, or the incorporation into the judgment of terms drafted by the parties). However, because the facts of this case do not satisfy even the more lenient McCall-Bey standard, we need not decide whether or how Kokkonen modifies McCall-Bey.