**In re Daniel L. FRY, Debtor.**

**In re Randolph Morcum, Sr. and Theresa A. Morcum, Debtors.**

**In re Deanna S. Karr, Debtor.**

**In re Marc L. Rumple and Tina C. Rumple, Debtors.**

**In re Raymond G. Schaffer and Debra J. Schaffer, Debtors.**

Nos. 00–71535, 99–73016, 99–73140, 99–73610, 00–72110.

United States Bankruptcy Court, C.D. Illinois, Danville Division.

Dec. 27, 2001.

Vicki A. Dempsey, Hannibal, MO, for Debtors.

John Germeraad, Petersburg, IL, trustee.

*OPINION*

GERALD D. FINES, Chief Judge.

Vicki A. Dempsey, the Debtors' counsel, in the five above-captioned cases, seeks additional attorney fees beyond the $1,000 review level in effect for the Central District of Illinois at the time the cases were filed. Before her current request and, since 1998, Ms. Dempsey has sought additional attorney fees in seven Chapter 13 cases. Between ten and twelve written opinions have been issued by the Seventh Circuit Court of Appeals, the U.S. District Court, and the Springfield Division of the U.S. Bankruptcy Court concerning those seven fee requests. In *In Matter of*

*Kindhart,* 160 F.3d 1176 (7th Cir.1998), (hereinafter *Kindhart* I), and *In Matter of Kindhart,* 167 F.3d 1158 (7th Cir.1999), (hereinafter *Kindhart* II), she sought additional fees in three cases which were denied by both the Bankruptcy Court and the District Court. She won on appeal. In *In Matter of Bond,* 254 F.3d 669 (7th Cir.2001), she sought additional fees in four cases which were again denied by both the Bankruptcy Court and the District Court. She lost this round on appeal. The Seventh Circuit Court of Appeals concluded its opinion in the *Bond* case by stating, at page 678:

> We conclude by requesting that Dempsey and the judges attempt to reach a truce, for it is apparent from both parties' documents that neither appropriately respects the other. As we hope we have shown, both parties have raised valid points during the course of this litigation.

Before discussing her current requests, it is necessary to discuss briefly the earlier decisions by the District and Appellate Courts. In *Kindhart* I and II, Ms. Dempsey sought fees beyond the $800 review level that Bankruptcy Judge Larry Lessen had imposed in the Springfield Division. The Bankruptcy Courts in the Danville and Peoria Divisions were at the $900 level at that time. Judge Harlington Wood, Jr., writing for the Seventh Circuit Court of Appeals, in *Kindhart* I, stated that the $800 review level was likely outmoded. Judge Wood also stated that views of the trustees and private attorneys might be helpful to the Bankruptcy Court and the District Court in adjusting the review level. Finally, he suggested that a uniform review level may be desirable for the entire District. In *Kindhart* I and II, Ms. Dempsey was allowed her requested fees and a uniform review level of $1,000 was established for the District. In addition,

that review level was to be evaluated by the Bankruptcy Judges every two years, beginning in December 2000.

In *Bond, supra,* Ms. Dempsey requested fees beyond the then uniform review level of $1,000 in four cases. Her requests were denied by the Bankruptcy Court and the District Court in Springfield. On appeal, the Seventh Circuit Court of Appeals held that it did not have jurisdiction to hear her appeal, but, if it did have jurisdiction, it would most likely deny her requests. That settled the matter for a time.

After the *Bond* decision, issued by the Seventh Circuit Court of Appeals in June 2001, Ms. Dempsey filed a motion with Judge Lessen, in the Springfield Division, asking him to disqualify himself in future cases she might file, because, she alleged, he had abused his discretion by denying her additional attorney fees and he had a personal bias against her. He denied her motion, but said she needed a fresh start and, therefore, removed himself from the consideration of any further cases filed by her law firm. Thereafter, this Court took over all cases filed by Ms. Dempsey's law firm.

On November 13, 2001, Ms. Dempsey filed requests for additional fees in the five pending cases. The Trustee responded, on November 29, 2001, and objected to some of her pending fee requests. In reviewing her pending requests for additional fees, this Court must look to the earlier opinions of the District Court and the Seventh Circuit Court of Appeals for guidance. U.S. District Judge Richard Mills has consistently stated that an attorney who seeks additional fees has the burden of proof that he or she is entitled to the fees requested; but the attorney may not get all listed and requested fees. Judge Mills has also found that the Bankruptcy Court has the obligation to review the fee request and recite in detail why specific fees are denied. *In re Sheldon Bond,* 249 B.R. 891 (C.D.Ill.2000). At page 898 in *Bond,* Judge Mills noted:

*Third,* "[i]n determining the amount of compensation to be awarded, the Court will consider 1) whether the tasks were performed within a reasonable number of hours, and 2) whether the requested hourly rate is reasonable." *In re Wiedau's, Inc.,* 78 B.R. 904, 909 (Bankr.S.D.Ill.1987). In determining the reasonableness of the amount of hours worked, bankruptcy courts consider:

1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill necessary to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee for similar work in the community; 6) time limitations imposed by the client or the circumstances; 7) the experience, reputation and ability of the attorney; 8) the "undesirability" of the case; 9) the nature and length of the professional relationship with the client; and 10) awards in similar cases.

*Id.,* citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974); *Wildman,* 72 B.R. at 712.

In *Bond,* at page 899, Judge Mills concluded:

Finally, both Dempsey and the bankruptcy court [Judge Lessen] have asked this Court for some direction for future cases. In the future, the Court would suggest to Dempsey that she present evidence to the bankruptcy court of the reasonableness of the time which she expended working on Chapter 13 cases and the reasonableness of her requested hourly rate. Moreover, the Court would suggest to the bankruptcy court that if it is going to deny an attorney's motion for

additional fees as being unreasonable, it should specify what specific expenditures of time it deems to be unreasonable or excessive. *Brackets added.*

▉▉▉ Judge Richard D. Cudahy, writing for the Seventh Circuit Court of Appeals, in *Bond, supra,* stated that the attorney seeking additional fees has the burden of proving those fees, but the Bankruptcy Court has the obligation to let the attorney know what is wrong with the fee request when fees are denied. Judge Cudahy suggested that the Bankruptcy Judges in the Central District of Illinois bear in mind *NAACP v. City of Evergreen, Ala.,* 812 F.2d 1332 (11th Cir.1987), which provides that the fee applicant should be given a chance to respond to the Court's concerns regarding the fee application and to make corrections before the Court rules. This Court has always followed that approach in reviewing fee applications.

The Court, in this current matter, initially conducted a telephone pre-trial conference call with Ms. Dempsey and the Trustee, on December 4, 2001, that lasted for more than one half hour. The Court, the Trustee, and Ms. Dempsey each made numerous comments about the fee requests and what needed to be considered. The Court requested that Ms. Dempsey review all the earlier decisions of the Bankruptcy Court, District Court, and Appellate Court concerning her previous requests. This Court told Ms. Dempsey that, at the full hearing scheduled for December 14, 2001, she needed to explain how her current fee requests were different from the ones denied by the Courts in the *Bond* case. She said the current fee requests were essentially the same as the earlier ones, but she, nonetheless, agreed to submit written justification prior to the hearing. The Court told Ms. Dempsey, as suggested by Judge Mills, in *Bond,* that she should review the *Johnson* and *Wiedau* cases.

In her partial response to Trustee's review of her requests for attorney fees, Ms. Dempsey states:

The Trustee implies in sub-paragraphs A, C, F and I, that simply because a notice or letter is routine, that it does not take time. I itemize every piece of mail that has to be opened and filed because all of that does take time. Paper is the nature of our business, is it not? And bankruptcies generate a great deal of it, Chapter 13's in particular. We have to keep a file open for three years or longer, and just because a piece of paper is exactly the same in each case, we cannot toss them out! I have to deal with each one as it comes in, and I believe it is fair to charge for each one.

▉▉▉ In considering her fee requests, this Court must heed Judge Mills comments in *In re Bond,* at page 897:

Reasonable time spent does not necessarily include all time actually expended. *In re Chas. A. Stevens & Co.,* 105 B.R. 866, 870–71 (Bankr.N.D.Ill.1989). While Dempsey may rely upon her time sheets as evidence of the time she actually worked on a particular case, she may not simply rely upon her time sheets as evidence of the reasonableness of the time which she expended.

▉▉▉ One of the most important goals for the Chapter 13 debtor should be to successfully complete the plan, whether the plan calls for payments to be made for thirty-six months or for a longer period of time. Statistics indicate that the Central District of Illinois has one of the best records for the successful completion of Chapter 13 plans. Furthermore, Trustee John Germeraad, the trustee here, has one of the best records of any trustee in any

district in the completion of Chapter 13 plans he oversees. He motherhens the Chapter 13s in his charge like few Chapter 13 trustees. Trustee Germeraad describes Ms. Dempsey as one of the four best Chapter 13 attorneys with whom he works. He said he never has to worry about her cases. She is conscientious, and always follows through with her duties. The Court also notes that many who evaluate Chapter 13 plans are interested in the percentage that unsecured creditors receive on their total unsecured debt. The plans in the five subject cases reviewed here call for payments to the unsecured creditors of ten percent, thirty-three percent, sixty-five percent, and two at one hundred percent of their total debt. Those are good returns to the creditors. Of course, Trustee Germeraad, Ms. Dempsey, and the debtors get credit for that.

 This Court has previously outlined the procedure which it follows in evaluating fee applications in the case of *In re Chellino,* 209 B.R. 106 (Bankr. C.D.Ill.1996), *affd.* at 138 F.3d 314 (C.A.7 1998) wherein it stated in part:

In evaluating attorney fee applications and itemizations the Court must consider the following areas:

(1) Are the services that are the subject of the application properly compensable as legal services?

(2) If so, were they necessary and is the performance of necessary tasks adequately documented?

(3) If so, how will they be valued? Were the necessary tasks performed within a reasonable amount of time and what is the reasonable value of that time?

*See: In re Wiedau's, Inc.,* 78 B.R. 904 (Bankr.S.D.Ill.1987), citing *In re Wildman,* 72 B.R. 700 (Bankr.N.D.Ill.1987). *In re East Peoria Hotel Corp.,* 145 B.R. 956 (Bankr.C.D.Ill.1991).

In order to support a fee application, a time itemization must list each activity, its date, the attorney who performed the work, a description of the nature and substance of the work performed, and the time spent on the work. *Wiedau, supra,* at 907. Time entries for telephone calls, conferences, and letters must state the purpose or nature of the service and the persons involved. *Id.* at 908. Each type of service must be listed separately with the corresponding specific time allotment. Services may not be lumped together. Additionally, time expended must be reasonable in light of the results obtained. *In re Mid–State Fertilizer Co.,* 83 B.R. 555 (Bankr. S.D.Ill.1988); and *In re Prairie Central Railway Co.,* 87 B.R. 952 ([Bankr. ]N.D.Ill.1988).

In keeping with its long-established procedure of reviewing fee applications, the Court has conducted a careful and exhaustive review of each of the fee itemizations in the five cases now at issue, in addition to a thorough review of the Court's file in each case. This review, considering the *Johnson* factors and the factors set forth in *Chellino,* has revealed that, while the cases at bar are relatively routine, the itemizations and justification supplied by Ms. Dempsey support the allowance of some additional fees beyond the $1,000 review level in effect at the time that the cases were filed.

In contrast to the previous cases in which Ms. Dempsey has sought additional attorney fees, in the instant cases Ms. Dempsey has submitted both a detailed fee itemization and a fee justification containing her own analysis under the *Johnson* factors. Ms. Dempsey's justification does support allowance of some additional fees in three cases; however, certain reductions are mandated by the case law.

Before addressing each case individually, the Court would note that the hourly rate charged by Ms. Dempsey is reasonable and commensurate with rates charged by other bankruptcy practitioners in the Central District of Illinois. The Court accepts the Trustee's observations of Ms. Dempsey's overall skill and performance as indicated on the record at hearing on December 14, 2001.

▮ In the case of *Daniel L. Fry,* Case No. 00–71535, Debtor's attorney has requested an additional fee in the amount of $422.50. The Trustee has not objected to the additional fee request; however, following the guidelines set forth above, the Court finds that various reductions in the amount requested are necessary. The May 5, 2000, time entry for 2 hours of time at $80 per hour must be deducted from the fees requested in that the time for imputing information into the bankruptcy schedules and plan is purely a clerical function, and, as such, not compensable as attorney time. It must be included as part of the attorney's overhead costs. The May 10, 2000, time entry of .2 hour for a cover letter to the Clerk with copies of the petition and plan should be reduced by .1 hour, as this is a routine task, and the amount of time claimed is excessive. The May 18, 2000, time entry of .2 hour for receipt of Trustee's letter to clients re: plan payments and tax returns must be reduced by .1 hour as this is a routine task requiring only minimal attorney time. The May 18, 2000, time entry for .1 hour for receipt and review of Court's Order to make plan payments and 341 Notice should be deleted in that this is clearly a clerical function of a routine task that should not require attorney time. The May 18, 2000, time entry for .2 hour for a letter to client re: creditors meeting and what to bring should be reduced to .1 hour in that this entry represents a routine matter that would occur in every Chapter 13 case, which could be handled by a form letter requiring only the insertion of a new date and time for the creditors' meeting. The May 30, 2000, time entry for .4 hour for preparation of motion to avoid lien on American General, certificate of service, and cover letter to Clerk of the Court must be stricken in its entirety as it lumps services together, and it is impossible for the Court to determine the reasonableness of the time claimed. Additionally, it appears that at least part of these services are clerical in nature, not requiring attorney time. The June 14, 2000, time entry for .4 hour must also be stricken in its entirety as it lumps services together, and at least part of the services included appear to be clearly clerical in nature. The June 20, 2000, time entry for .4 hour for preparation of amended motion to avoid lien of Associates Finance shall be reduced to .2 hour in that the Court finds that .4 hour to merely amend a previous motion is excessive. Two times entries on June 27, 2000, for .1 hour each for receipt of a notice from the Court are stricken in that the services performed are purely clerical in nature, not compensable as attorney time. The time entry of February 9, 2001, for preparation of motion for leave to use tax refunds, certificate of service, and cover letter to Clerk of Court is stricken in its entirety as the services are lumped together and are partially clerical in nature. In total, the Court finds that the additional $422.50 fee request must be denied in its entirety.

In the case of *Randolph Morcum, Sr. and Theresa A. Morcum,* Case No. 99–73016, Debtors' attorney has requested additional fees in the amount of $217.50. As in the *Fry* case, the Court finds that the September 8, 1999, time entry for 2 hours at $80 for input of data into the computer for the bankruptcy schedules and plan must be stricken as purely clerical time which cannot be billed on an hourly basis,

but rather must be included as part of the attorney's overhead. The September 17, 1999, entry for receipt and review of Trustee's letter to client re: plan payments and tax information is reduced to .1 hour, as being a routine task, not unique to the case. The September 21, 1999, time entry for receipt and review of Order of Court re: plan payments and 341 Notice is stricken in its entirety as a routine matter, not unique to the case, and purely clerical in nature. The September 29, 1999, time entry for .3 hour for receipt and review of objection to plan from Great River Credit Union and letter to client re: interest rate is reduced by .1 hour as the services are lumped together, making it impossible to for the Court to determine the reasonableness of each service listed. The time entry of December 30, 1999, for .3 hour for phone call with Trustee's office and preparation of stipulation regarding tax refund and cover letter to Trustee is reduced by .1 hour for the reason that the services are lumped together, making it impossible for the Court to determine the exact extent and nature of each service and the reasonableness thereof. The time entry of August 10, 2001, for .4 hour for preparation of motion for 60 day moratorium, extension of plan, certificate of service, and cover letter to Trustee is reduced by .2 hour in that the services are, once again, lumped together and are, at least in part, clerical in nature. Based upon these required reductions, the Court finds that the request for additional attorney's fees in the amount of $217.50 must be denied in its entirety.

 In the case of *Deanna S. Karr*, No. 99–73140, Debtor's attorney initially requested additional fees in the amount of $534. In response to the Trustee's objection to these fees, Debtor's attorney increased the fee request to $701.50, including time incurred in preparing the fee application, adding one hour of attor-

ney time and one hour of staff time. At hearing, on December 14, 2001, Debtor's attorney agreed to withdraw this additional request for time in preparing the fee application, thus standing on her original request for $534 in additional fees. As in the cases above, the Court finds that the September 21, 1999, time entry for 2 hours at $80 per hour for preparation of schedules and plan must be stricken in its entirety as being clerical in nature. The September 24, 1999, time entry for .4 hour for preparation of emergency motion for return of vehicle and motion for contempt against Scott Gardner is reduced to .2 hour, as those services are lumped together, making it impossible for the Court to determine the exact time spent on each matter and the reasonableness thereof. The time entry of September 24, 1999, for .2 hour for fax to Scott Gardner of motion and letter regarding turnover of car is stricken in its entirety as a matter which is purely clerical in nature. The September 24, 1999, time entry in the amount of .4 hour for preparation of certificate of service and cover letter to Clerk of Court re: emergency motion is reduced by .2 hour in that the services are lumped together and appear to be partially clerical in nature. The time entry of September 27, 1999, for .2 hour for fax to Attorney Woodworth of plan and motion is stricken as a matter that is purely clerical in nature. The time entry of September 28, 1999, for .1 hour for receipt and review of Court Order and 341 Notice is stricken as being a clerical matter. The time entry of September 30, 1999, for .5 hour for preparation of a motion to avoid lien on Security Finance, certificate of service, and cover letter to Court is reduced by .2 hour, in that the services are lumped together and appear to be, at least partially, clerical in nature. The time entry of October 1, 1999, for .2 hour for fax to Attorney Woodworth with proof of insurance is

stricken in its entirety as being a clerical matter. The October 5, 1999, time entry for .3 hour for preparation of emergency turnover motion denied as moot and cover letter to Court is reduced by .1 hour as the services are lumped together. The November 15, 1999, time entry of .1 hour for notice requesting order on motion to avoid lien is denied as a clerical matter. The December 7, 1999, time entry for .1 hour for notice of phone conference with Court on 12–23–99 is denied as being a clerical matter. The time entry of June 21, 2000, for .2 hour for preparation of certificate of service and cover letter to Court is denied as a clerical matter. The time entry of December 14, 2000, for .2 hour for fax to Hannibal Regional Hospital re: commencement notice is denied as a clerical matter. The time entry of August 9, 2001, for .4 hour for preparation of motion for 60 day moratorium, certificate of service, and cover letter to Clerk of Court is stricken, as the services are lumped together and appear to be, at least partially, clerical in nature. In total, the additional fee request for $534 must be reduced by $447.50, leaving additional fees allowable in the amount of $86.50.

In the case of *Marc L. Rumple and Tina C. Rumple*, Case No. 99–73610, Debtors' attorney initially requested additional fees in the amount of $722.50. In response to the Trustee's objection to these additional fees requested, Debtors' attorney increased her fee request to $865, adding one hour of attorney time and one hour of staff time for preparation of the fee application. At hearing on December 14, 2001, Debtor's attorney agreed that she would withdraw the additional fee request for time in preparing the fee application, thus standing on her original request for $722.50, in additional fees. As above, the Court finds that the October 27, 1999, time entry for 2 hours at $80 per hour for entering information in the computer must be denied as clerical time included in the attorney's overhead. The November 2, 1999, time entry for .2 hour to prepare a cover letter to the Court and copy to client of paperwork is stricken as clerical in nature. Two time entries on November 8, 1999, for .2 hour each are both stricken in their entirety as they lump services together, some of which appear to be purely clerical in nature. The November 8, 1999, time entry of .1 hour for receipt of 341 Notice is stricken as being clerical. The November 9, 1999, time entry for letter to clients re: creditors' meeting and what to bring is reduced by .1 hour, as being a routine matter requiring only insertion of the date of the creditor's meeting into a form letter. The November 9, 1999, time entry for .5 hour for preparation of suggestion of bankruptcy on Schyler County District Hospital lawsuit and cover letter to Clerk of Court is reduced by .2 hour in that the services are lumped together and appear to be partially clerical in nature. The November 9, 1999, time entry of .5 hour for preparation of suggestion of bankruptcy on Gem City account, service lawsuit, and cover letter to Court is also reduced by .2 hour as the services are lumped together and appear to be partially clerical in nature. The time entry of December 3, 1999, for .4 hour for preparation of motion to avoid lien on Heights Finance with cover letter to Court and copies to Trustee, creditor, and client is reduced by .2 hour as being services which are lumped together and partially clerical in nature. The December 27, 1999, time entry for .1 hour for receipt of notice of objection date on motion to avoid lien is stricken as being clerical in nature. The January 5, 2000, time entry for .1 hour for receipt of confirmation order from Court is stricken as being clerical in nature. The May 30, 2000, time entry for .2 hour for notice from Court regarding motion of Heights Fi-

nance is stricken as being clerical. The June 14, 2000, time entry for .2 hour for receipt of order from Court re: granting motion for relief we sent to co-debtor is reduced by .1 hour as being, at least partially, clerical in nature. The January 16, 2001, time entry for .1 hour for notice from Court regarding motion to dismiss is stricken as clerical in nature. The time entry of January 25, 2001, for .4 hour for preparing Debtors' response to motion to dismiss, certificate of service, and cover letter to Court is reduced by .2 hour as being services which are lumped together and partially clerical in nature. The time entry of October 16, 2001, for .4 hour for preparation of objection to proof of claim No. 6 filed by creditor, Heights Finance, certificate of service, and cover letter to the Clerk of Court is reduced by .2 hour as being services which are lumped together and partially clerical in nature. The October 24, 2001, time entry for .1 hour for receipt and review of notice setting answer to deadline to object to claim is stricken as being clerical in nature. In summary, the fee request for $722.50 must be reduced by $472.50, leaving an allowable additional fee of $250.

In the case of *Raymond G. Schaffer and Debra J. Schaffer,* Case No. 00–72110, Debtors' attorney initially requested additional fees in the amount of $672.50. In response to the Trustee's objection to her fees, Debtors' attorney increased the fee request to $865, adding one hour of attorney time and one hour of staff time for preparing the fee application. At hearing on December 14, 2001, Debtors' attorney agreed to withdraw the additional time request for preparing the fee application, thus standing on her original request for $672.50 in additional fees. As in the previous cases, the June 26, 2000, time entry for 2 hours at $80 per hour for preparation of schedules and plan is stricken as a clerical matter. The July 11, 2000, time entry for .1 hour for receipt of order of Court regarding plan payments is stricken as a clerical matter. The July 12, 2000, time entry of .2 hour for letter to clients re: 341 meeting time, place, and what to bring is reduced by .1 hour as being a routine matter. The time entry of July 19, 2000, for .4 hour for receipt and review of security agreement from Heights Finance and letter to clients regarding non-household goods collateral is reduced by .2 hour as the services are lumped together. The time entry of July 25, 2000, for .2 hour for call from client re: collateral for Heights Finance and follow-up letter to them regarding options in Chapter 13 is reduced by .1 hour as the services are lumped together. August 7, 2000, time entry for .1 hour for receipt of notice from Trustee re: failure to make payment is stricken as a clerical matter. The September 8, 2000, time entry for .1 hour for receipt of notice from Trustee regarding missed payments is stricken as a clerical matter. The September 8, 2000, entry for .4 hour for preparation of confirmation order and letter to Trustee and copy to Attorney Woodworth is reduced by .2 hour as the services are lumped together. The September 8, 2000, time entry for .3 hour for preparation of proof of claim on real estate tax and cover letter to Clerk of Court is reduced by .2 hour as the services are lumped together. The September 11, 2000, time entry for .2 hour for fax to Trustee re: address of payroll office for BNSF Railroad is stricken as a clerical matter. The October 4, 2000, time entry for .3 hour for fax from Attorney Duesterhaus re: signed confirmation order and response to them is reduced by .2 hour as the services are lumped together. The October 12, 2000, time entry for .3 hour for fax from Woodworth re: house foreclosure and response to him is reduced by .2 hour as the services are lumped together. The October

18, 2000, time entry for .3 hour for receipt and review of deed in lieu of foreclosure and forwarding letter to client for signature of deeds is reduced by .1 hour as the services are lumped together. In total, the additional fee request for $672.50 must be reduced by $385, leaving a total additional fee allowable in the amount of $287.50.

### Conclusion

Since the *Kindhart* I case, in 1998, the review level for Chapter 13 cases for the Central District of Illinois has been increased substantially by the Courts. In 1998, the review level was $900 in the Danville and Peoria Divisions and $800 in the Springfield Division. Today, the uniform review level for the Central District of Illinois is $1,500.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure. See written Order.